IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,346

STATE OF KANSAS,
*Appellee*,

v.

TIOFILO RODRIGUEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

Charging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does.

2.

Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant.

3.

A Kansas charging document should be regarded as sufficient if the State's factual allegations of the defendant's intention and action, when compared to the statutory definition of the crime charged and when proved beyond a reasonable doubt, would justify a guilty verdict.

1

4.

If a charging document is statutorily insufficient, the next step is a harmlessness inquiry under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105 to examine whether the defect affected the defendant's substantial rights.

5.

An out-of-state misdemeanor that only requires the defendant to act with criminal negligence is not comparable to a Kansas offense that requires the defendant to act recklessly. If an out-of-state misdemeanor is not comparable to a Kansas offense, it must be scored as a nonperson crime in this state.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 6, 2015. Appeal from Grant District Court; CLINTON B. PETERSON, judge. Opinion filed March 24, 2017. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jessica E. Akers*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with her on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Tiofilo Rodriguez petitions this court for review of the Court of Appeals' decision in *State v. Rodriguez*, No. 110,346, 2015 WL 715528 (Kan. App. 2015) (unpublished opinion), which affirmed his conviction and sentence for aggravated kidnapping and related charges. We granted the petition in part, designating two issues for review, to-wit: (1) whether the information charging Rodriguez with aggravated

kidnapping was so defective as to warrant reversal; and (2) whether two prior Colorado misdemeanor convictions were improperly classified and aggregated with another misdemeanor conviction to be scored as a person felony for criminal history purposes. Under the paradigm for analyzing defective charging instrument claims raised for the first time on appeal recently established in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), the claimed defects in charging Rodriguez with aggravated kidnapping do not require reversal of that conviction. But the State failed to establish that the Colorado convictions qualified for aggregation in this state. Accordingly, Rodriguez' convictions are affirmed, but his sentence is vacated and the case is remanded for resentencing under the appropriate criminal history score.

FACTUAL AND PROCEDURAL OVERVIEW

On December 29, 2011, Rodriguez lived with his girlfriend, Alicia Apodaca, and her two sons, J.R. and S.R., in Alicia's apartment in Ulysses. At the time, J.R. was age 14 and S.R. was 13 years old. On that date, Alicia decided to sleep in her sons' bedroom, after smelling liquor on Rodriguez' breath. But Rodriguez entered the boys' bedroom and, after watching television for a time, suddenly shut the door, telling Alicia and the boys that they would not be getting out of the bedroom ever again. He battered Alicia for about 2 hours, punching and kicking her in the face, legs, head, and back, as well as pulling her hair. Rodriguez repeatedly threatened that Alicia would not live through the night and that her sons were going to watch her die. When the boys tried to help their mother, Rodriguez hit and shoved them. He tied the boys' ankles with shoelaces.

When Alicia tried to escape, Rodriguez threw her against the wall with such force that the impact broke the sheetrock. Alicia required medical attention at the hospital and would later relate that her vision was blurry for 2 weeks.

3

Although Rodriguez broke one cellphone, the three victims managed to call 911 during the ordeal. Ultimately a Grant County Sheriff's deputy and Ulysses police officer arrived and started to force their way in when they heard screaming and glass breaking. Deputy Johnathon Smith began to kick in a door, before Rodriguez opened the door and let the officers in. Officer Julie Hart found Alicia, J.R., and S.R. barricaded in the bedroom. The officer cut the shoelaces from S.R.'s ankles and observed that his hands were bloody. He had broken the glass window to get the officers' attention when he heard them arrive.

While Smith was leading Rodriguez out of the apartment in handcuffs, Rodriguez told Alicia, J.R., and S.R. that when he got out of jail he would come back to "get them" and finish what he started. He bragged that he could get out of the handcuffs at any time.

Officer Hart interviewed the victims at their home and later at the hospital and took pictures of Alicia's injuries. The boys' testimony at trial was fairly consistent with Officer Hart's account and their testimony at the preliminary hearing, albeit there were some discrepancies. J.R. and S.R. both testified at the preliminary hearing that Rodriguez had not threatened their lives, but at the jury trial, they both said that Rodriguez *had* threatened them. They explained the difference by saying they were nervous at the preliminary hearing because it was the first time they had seen Rodriguez since the ordeal. Alicia's trial testimony was consistent with her prior statements, except that she added at trial that all three victims had vomited into a trash can during the violence.

Rodriguez testified on his own behalf. He admitted to hitting Alicia three times. He said they were arguing because Alicia was calling or texting someone else and she had asked him to move out—first within 2 weeks, but then said to be out within 6 days. Rodriguez denied all other accusations, specifically stating that he had not hit Alicia more than three times, had not kicked her, and had not pushed her against the wall. He claimed

4

the hole in the sheetrock occurred after he left the room to open the door for the police. He also denied hitting S.R. and J.R., denied threatening them, and denied tying them up. He said he never prevented anyone from leaving the bedroom.

Rodriguez called three witnesses—cousins with whom he spent the evening before returning to the apartment on the night of the incident. The first two witnesses, Herminia Parada and Nancy Guerrero, said Rodriguez was at their houses from 2:30 to 7:30 p.m. on the 28th. They also said he was only fluent in English, not Spanish, presumably to refute the shouting in Spanish that can be heard on the recorded 911 calls. Nevertheless, a female voice can be heard on the recording pleading, "Tio, no."

The third witness, Sisto Rodriguez, said he and Rodriguez drank together that evening until about 11:30 but that Rodriguez did not seem drunk when he left, despite the two having split a 12-pack of beer. Sisto also said Rodriguez was not fluent in Spanish.

The jury found Rodriguez guilty of aggravated kidnapping of Alicia, kidnapping of J.R., kidnapping of S.R., aggravated battery of Alicia, criminal threat of Alicia, criminal threat of J.R., criminal threat of S.R., battery of J.R., and battery of S.R. The jury found Rodriguez not guilty of aggravated assault of Alicia and criminal damage to property.

The prior conviction worksheet on Rodriguez' presentence investigation report reflected two Colorado misdemeanor convictions for third-degree assault, pursuant to Colo. Rev. Stat. § 18-3-204, and a misdemeanor battery conviction from the municipal court in Ulysses. Aggregating the three misdemeanors to score as one person felony elevated Rodriguez' criminal history score from D to B. *Rodriguez,* 2015 WL 715528, at *13.

5

At the sentencing hearing, the defense called Parada and Guerrero to testify to their cousin's good character and to cast aspersions on the victims' motives. Rodriguez took the stand to ask the court to take into consideration the various good acts he had performed, particularly his service in the Marines around the time of the first Iraq war. During his allocution, Rodriguez made the following statement, which the sentencing court apparently interpreted as a stipulation to the criminal history score, to-wit:

> "I got my presentence report. Yeah, you know, [the State] wants to use my record against me, and that's the law. That's the law, Judge, you know that. That is the law. I'm not—I'm not fighting that. If you're going to use that against me, use what I've done good. I've done a lot more good than I've done bad, I have."

Using a criminal history score of B, selecting the aggravated grid box sentence for each of the felonies, and imposing the sentences consecutively, the court sentenced Rodriguez to a controlling prison term of 774 months, or 64 ½ years. Rodriguez timely appealed, and a divided panel of the Court of Appeals affirmed his conviction. The concurring and dissenting judge, Senior Judge Edward Larson, challenged the statutory authority to aggregate the Colorado misdemeanors and would have vacated Rodriguez' sentence and remanded to resentence with a criminal history of D.

Rodriguez sought our review on five issues, but we granted review on only the two issues described above relating to a defective charging instrument and the aggregation of out-of-state misdemeanor convictions.

6

For the first time on appeal, Rodriguez contends that the information in his case, even as amended, failed to charge him with the crime of aggravated kidnapping against Alicia. Aggravated kidnapping incorporates the elements of simple kidnapping, which, in turn, requires that the kidnapper confine the victim with the intent to hold the person for one of four statutorily specified purposes. K.S.A. 2011 Supp. 21-5408. The specific intent set forth in the jury instructions with respect to the kidnapping of Alicia was the one described in K.S.A. 2011 Supp. 21-5408(a)(3), which is "[t]o inflict bodily injury or to terrorize the victim or another."

But neither that specific intent element nor any other was included in the charging document. Instead, the information simply alleged that Rodriguez did "take or confine any person, to wit:  ALICIA APODACA, accomplished by force, threat, or deception, and bodily harm is inflicted upon the person kidnapped." The last part of the charge— about bodily harm being inflicted—was necessary in this case because kidnapping is elevated to aggravated kidnapping "when bodily harm is inflicted upon the person kidnapped." K.S.A. 2011 Supp. 21-5408(b).

Rodriguez asserts that, because the charging document omitted the specific intent element, it failed to charge kidnapping. Consequently, if the information did not charge kidnapping, it could not charge aggravated kidnapping, but rather only charged the crime of criminal restraint. He asks this court to overrule *State v. Hall*, 246 Kan. 748, 793 P.2d 737 (1990), with respect to the analysis employed on defective complaint claims raised for the first time on appeal, and find that the omitted element requires reversal. In the alternative, Rodriguez argues that, even under the *Hall* test, the defective complaint precluded any challenge to the sufficiency of the evidence to support kidnapping because

7

the defendant could not know which specific intent the State was trying to prove. Thus, the conviction should be reversed because Rodriguez was deprived of his "substantial rights to a fair trial."

The Court of Appeals panel opined that it was still duty-bound to follow the precedent set in *Hall*. *Rodriguez*, 2015 WL 715528 at, *7; see *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012) (Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent indication Supreme Court is departing from previous position). Further, it rejected Rodriguez' argument that the missing element claim should be reviewed under a sufficiency of the evidence theory and found that the evidence was sufficient for the jury to convict of aggravated kidnapping under the elements instruction given to the jury. 2015 WL 715528, at *8-9.

*Standard of Review*

As Rodriguez acknowledged in his petition for review, at that point in time, this court was seeking additional briefing on the *Hall* analysis in the *Dunn* case and the outcome of that case could affect Rodriguez' claims. The decision in *Dunn* was subsequently filed, and it will affect this case. It overruled *Hall*'s special preservation treatment of defective charging instrument errors, as well as overruling the notion that the charging document bestows or confers subject matter jurisdiction on state courts to adjudicate criminal prosecutions. *Dunn*, 304 Kan. at 811. Given that the Court of Appeals based its decision on *Hall*, we must, by necessity, exercise de novo review of this issue.

8

*Analysis*

As suggested above, *Dunn* overruled a substantial amount of the law that had been applicable to charging document challenges for at least the last half-century. See, *e.g.*, *State v. Minor*, 197 Kan. 296, 416 P.2d 724 (1966) (omitted element in charging document will result in reversal for lack of jurisdiction). *Dunn* summarized the result of those changes as follows:

> "[C]harging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does. Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant." 304 Kan. at 811.

Because of that subsequently overruled prior caselaw, Rodriguez understandably based his arguments on his assertion that the charging document did not contain all of the *elements* of aggravated kidnapping. But *Dunn* also specifically overruled the "categorical declaration that a charging document must include all essential elements of the charged offense to avoid insufficiency." 304 Kan. at 811. Instead, a charging document's sufficiency is now tested by comparing the *facts* it alleges against the statutory definition of the charged crime. As *Dunn* explained:

> "The plain language of K.S.A. 22-3201(b) is relatively clear:  A charging document shall state 'essential facts' constituting the crime charged, and the document 'shall be deemed sufficient' if it is 'drawn in the language of the statute.' The statute's emphasis on 'facts' rather than 'elements' is repeated in other related statutes and legally significant. A Kansas charging document should be regarded as sufficient now, as it was before *Minor*, when it has alleged facts that would establish the defendant's commission

9

of a crime recognized in Kansas. See *State v. Hazen*, 160 Kan. 733, 736-39, 165 P.2d 234 (1946) (charging document sufficient despite failure to include affirmative allegation that defendant intended a specific person bodily injury); *James* [*v. Amrine*, 157 Kan. 397, 400, 140 P.2d 362 (1943)] (charging document sufficient despite erroneously alleging crime took place 6 months after defendant's trial); [*State v.*] *Keester*, [134 Kan. 64, 71, 4 P.2d 679 (1931)] (charging document merely discloses jurisdiction; not necessary for charging document to state both counties in which crime took place). Because all crimes are statutorily defined, this is a statute-informed inquiry. The legislature's definition of the crime charged must be compared to the State's factual allegations of the defendant's intention and action. If those factual allegations, proved beyond a reasonable doubt, would justify a verdict of guilty, then the charging document is statutorily sufficient. If the charging document is instead statutorily insufficient, then the State has failed to properly *invoke* the subject matter jurisdiction of the court, and an appropriate remedy must be fashioned. The problem is not a substantive absence of jurisdiction; it is a procedural failure to demonstrate its existence. The availability of a remedy is key. Statutory infirmity does not inevitably fail to bestow subject matter jurisdiction or deprive the court of jurisdiction or destroy jurisdiction. See K.S.A. 22-3502 (arrest of judgment available if charging document does not charge crime *or* court without jurisdiction)." (Emphasis added.) 304 Kan. at 811-12.

Although argued in the context of a missing element, Rodriguez' contention is that the information failed to allege that he confined Alicia with the specific intent to inflict bodily injury or to terrorize Alicia or another. Instead, the charging document simply alleged that Rodriguez took or confined Alicia by force, threat, or deception—without alleging a reason for such taking or confinement—and that bodily injury was inflicted upon Alicia. Under the new test from *Dunn*, the question becomes whether proof of those charging document factual allegations would produce sufficient evidence from which a rational jury could find, beyond a reasonable doubt, that Rodriguez committed the crime of kidnapping as it is defined by statute.

10

Rodriguez presents a compelling argument; it would not be sufficient evidence of kidnapping, as defined in K.S.A. 2011 Supp. 21-5408(a), for the State to prove only the physical act of taking or confining a person by force, threat, or deception. Otherwise, a person who, by force, threat, or deception, takes an uncooperative surprise party honoree to the party site could be subject to prosecution for the crime of kidnapping. And, if bodily injury is inflicted on the honoree by a guest's exuberant expression of surprise, the "crime" would be elevated to aggravated kidnapping. In other words, a "statute-informed inquiry," 304 Kan. at 812, reveals that an actor's reasons for holding a victim are an indispensable part of the crime of kidnapping. See K.S.A. 2011 Supp. 21-5408(a)(1)-(4).

As noted above, *Dunn* instructs us to compare the legislature's definition of kidnapping "to the State's factual allegations of the defendant's intention and action." 304 Kan. at 812. Here, however, the State made no factual allegations regarding Rodriguez' intention. Perhaps if the information had alleged that it was Rodriguez who had inflicted the bodily injury on Alicia, one could reasonably infer that, because he inflicted bodily injury on Alicia, he forcibly confined her with the intent to inflict that bodily injury. But the passive voice of the charging document—"bodily harm is inflicted upon the person kidnapped"—does not necessarily support an inference that Rodriguez inflicted the bodily injury, much less that he intended to hold the victim for that purpose. Consequently, the State failed to charge the crime of aggravated kidnapping of Alicia.

The next step in the *Dunn* analysis is a "harmlessness inquiry under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105," to "examine whether the defect affected [Rodriguez'] substantial rights." 304 Kan. at 821. *Dunn* concluded that the charging document error in that case did not affect the defendant's substantial rights "because [Dunn] and his trial counsel clearly understood exactly what the State sought to prove on [the forgery count]." 304 Kan. at 821.

11

The same is true for Rodriguez. His trial testimony was aimed at refuting the State's claim that he intended to inflict bodily injury or terrorize the victims. Rodriguez testified that he argued with Alicia and admitted to hitting her three times. But then he specifically denied that he had hit Alicia more than three times; denied that he had kicked her; and denied that he had pushed her against the wall. With respect to S.R. and J.R., Rodriguez denied hitting them, denied threatening them, and denied tying them up. He claimed that he never prevented anyone from leaving the bedroom. The defense called three witnesses to testify that Rodriguez did not speak Spanish, presumably to refute that it was his voice terrorizing the victims in Spanish on the recorded 911 calls. In short, Rodriguez defended as if he had been explicitly told that the claim against him was that he confined Alicia in the bedroom by force or threat with the intent to hold her to inflict bodily injury or terrorize her, and that she did sustain bodily injury. A more carefully worded charging document would not have changed the defense. Rodriguez' substantial rights were not affected by the error.

AGGREGATION OF COLORADO MISDEMEANOR CONVICTIONS

In the second issue upon which we granted review, Rodriguez challenges the district court's use of a criminal history score of B to impose the sentence on the base offense of aggravated kidnapping. The presentence investigator arrived at that score by aggregating three misdemeanors to rate as an additional person felony. See K.S.A. 2011 Supp. 21-6811(a) (every three prior convictions for Class A or Class B person misdemeanor counted as one person felony). Rodriguez argues that two of the aggregated convictions were for Colorado misdemeanors that were not subject to aggregation under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2011 Supp. 21-6801 *et seq.*, and that his score should have been D. That change in criminal history score would reduce the maximum presumptive sentence for aggravated kidnapping from 618 months

12

to 267 months, *i.e.*, Rodriguez' prison term would be shortened by more than 29 years. 2015 WL 715528, at *16.

*Standard of Review*

Our resolution of the question presented on determining a criminal history score will involve statutory interpretation, which is a question of law subject to de novo review. See *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015) (whether prior conviction should be classified as person or nonperson offense involves interpretation of KSGA, a question of law over which appellate courts have unlimited review).

*Analysis*

First, we pause briefly to address the notion that Rodriguez' statements during allocution included a criminal history stipulation that invited any error in the calculation of his criminal history score. The Court of Appeals noted that Rodriguez was challenging the classification and aggregation of his prior convictions, not their existence, and, as such, those were "questions of law . . . not subject to the invited error rule as no party can stipulate to an incorrect application of the law. [Citation omitted.]" *Rodriguez,* 2015 WL 715528, at *13. We agree. See also *State v. Hankins*, 304 Kan. 226, 231-32, 372 P.3d 1124 (2016) (Kansas criminal defendant cannot stipulate to illegal sentence). Further, the panel opined that Rodriguez' "statements were not close to being a stipulation of his criminal history score." 2015 WL 715528, at *14. Again, we agree and turn to the merits.

As noted above, K.S.A. 2011 Supp. 21-6811(a) specifically provided for the aggregation of "[e]very three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history, or any combination thereof," to be scored as "a person felony for criminal history purposes." The KSGA also allowed for the

13

use of out-of-state convictions in the calculation of Rodriguez' criminal history score, which would include the aggregation procedure. Specifically, K.S.A. 2011 Supp. 21-6811(e) provided:

> "Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime."

Rodriguez' two prior Colorado convictions were for a crime labeled third-degree assault under Colo. Rev. Stat. § 18-3-204. One conviction was in 2001 and the other in 2005. Although the Colorado statute was amended in 2004, the statutory language defining the crime of third-degree assault that is relevant to our inquiry has remained substantively the same since 1977, to-wit:

> "A person commits the crime of assault in the third degree if the person knowingly or recklessly causes bodily injury to another person or with criminal negligence the person causes bodily injury to another person by means of a deadly weapon. Assault in the third degree is a class 1 misdemeanor[.]" Colo. Rev. Stat. § 18-3-204 (2004).

Because Colorado classified third-degree assault as a misdemeanor, K.S.A. 2011 Supp. 21-6811(e) required that those convictions be scored as misdemeanors in calculating a Kansas criminal history. But the same statute directs this state to determine the classification of the misdemeanor as person or nonperson by referring to comparable offenses. Both the majority and dissenting opinions below refer to an earlier Court of Appeals decision, *State v. LaGrange*, 21 Kan. App. 2d 477, 481-82, 901 P.2d 44, *rev.*

14

*denied* 258 Kan. 861 (1995), which applied K.S.A. 1994 Supp. 21-4711(e)—an earlier, yet identical version of K.S.A. 2011 Supp. 21-6811(e)—to Colorado's third-degree assault.

*LaGrange* opined that while the Kansas statute precluded classifying the Colorado conviction as a felony for Kansas criminal history purposes because Colorado classified it as a misdemeanor, "the statute does not prevent a [Kansas] court from considering a felony as a comparable offense for purposes of determining whether an out-of-state misdemeanor offense is a person or nonperson crime." 21 Kan. App. 2d at 482. After relating that the gravamen of the Colorado offense was "with criminal negligence . . . caus[ing] bodily injury to another person . . . by means of a deadly weapon," *LaGrange* determined that the comparable Kansas offense was aggravated battery, a person felony, defined under K.S.A. 1994 Supp. 21-3414(a)(2)(B) as "'recklessly causing bodily harm to another person with a deadly weapon.'" 21 Kan. App. 2d at 481. Accordingly, *LaGrange* found that the Colorado conviction could be classified as a *person* misdemeanor for Kansas criminal history purposes.

*LaGrange* inexplicably ignored the statutory language in K.S.A. 1994 Supp. 21-4711(a) making aggregation only applicable to "class A and class B person misdemeanors." The rule it applied was simply that "three prior person misdemeanors count as one prior person felony conviction." 21 Kan. App. 2d at 481. Therefore, *LaGrange* was not constrained by the absence of a statutory mechanism for classifying out-of-state misdemeanors as either class A or class B in this state. Rather, that panel simply held that the Colorado conviction, classified as a person misdemeanor in this state, could be used for a K.S.A. 2011 Supp. 21-6811(a) aggregation.

Because we find *LaGrange*'s comparability holding to be flawed, we need not resolve the dispute over whether the Colorado conviction should have been classified as a

Class A or B misdemeanor in this state. As noted above, K.S.A. 2011 Supp. 21-6811(e) directs that, if this state "does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime." And nonperson misdemeanors are not aggregated.

To reiterate, *LaGrange* compared some elements of Colorado's third-degree assault—"with criminal negligence . . . caus[ing] bodily injury to another person . . . by means of a deadly weapon"—to the elements of a version of Kansas' aggravated battery—"'recklessly causing bodily harm to another person with a deadly weapon.'" K.S.A. 1994 Supp. 21-3414(a)(2)(B). But *LaGrange*'s recitation of the Colorado crime's elements was incomplete. The Colorado statute actually provides three ways in which a person can commit third-degree assault:  (1) "knowingly . . . caus[ing] bodily injury to another person"; (2) "or recklessly caus[ing] bodily injury to another person"; or (3) "with criminal negligence the person causes bodily injury to another person by means of a deadly weapon." Colo. Rev. Stat. § 18-3-204 (2004). The first two ways are comparable to the Kansas misdemeanor offense of simple battery, defined under K.S.A. 2011 Supp. 21-5413(a)(1) as "[k]nowingly or recklessly causing bodily harm to another person." The only difference in the two states' statutory language is that Colorado proscribes causing "bodily injury," while Kansas proscribes causing "bodily harm." We do not require identical statutory language when comparing out-of-state convictions. See *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003). In that light, one would be hard-pressed to quibble with the comparability of the simple battery portion of the Colorado statute, but we must deal with the entire statute.

With respect to the third way to commit third-degree assault in Colorado (with a deadly weapon), which *LaGrange* compared to Kansas' reckless aggravated battery with a deadly weapon, the panel did not discuss the respective mental states required for each crime. Apparently, that panel just assumed that Colorado's mens rea of "with criminal

16

negligence" is the equivalent of Kansas' mens rea of "recklessly." That assumption is not supported by the law of either state.

To begin, the structure of Colo. Rev. Stat. § 18-3-204 (2004) refutes the notion that Colorado equates criminal negligence with recklessness. If the two concepts were equivalent, the second phrase of the Colorado statute could be restated as "with recklessness, to cause bodily injury by means of a deadly weapon." But that would be redundant; the prior phrase already proscribes "recklessly causing bodily injury to another person." The only reason for the Colorado Legislature to make a separate provision applicable to using a deadly weapon with criminal negligence is to make that dangerous act punishable at the same level but with a less culpable state of mind than intentionally or recklessly.

Colorado's legislative definitions corroborate that the state does not equate criminal negligence with recklessness. The definition of "[c]ulpable mental state" separately lists the two terms, to-wit: "intentionally, or with intent, or knowingly, or willfully, or recklessly, or with criminal negligence, as these terms are defined in this section." Colo. Rev. Stat. § 18-1-501(4) (2004). Then, the definitions of the terms in Colo. Rev. Stat. § 18-1-501 (2004) explain the difference between the mental states:

> "(3) . . . A person acts with *criminal negligence* when, through a gross deviation from the standard of care that a reasonable person would exercise, he *fails to perceive* a substantial and unjustifiable risk that a result will occur or that a circumstance exists.
> . . . .
> "(8) . . . A person acts *recklessly* when he *consciously disregards* a substantial and unjustifiable risk that a result will occur or that a circumstance exists." (Emphasis added.)

17

The Colorado Supreme Court views the difference among mental states as a matter of degree of culpability. *People v. Hall*, 999 P.2d 207, 219 (Colo. 2000) ("Although recklessness is a less culpable mental state than intentionally or knowingly, it involves a higher level of culpability than criminal negligence."). With respect to the specific difference between recklessness and criminal negligence, *Hall* explained:

> "Criminal negligence requires that, 'through a gross deviation from the standard of care that a reasonable person would exercise,' the actor fails to perceive a substantial and unjustifiable risk that a result will occur or a circumstance exists. § 18-1-501(3); *see also People v. Jones,* 193 Colo. 250, 253-54, 565 P.2d 1333, 1335 (1977) (discussing criminally negligent homicide). An actor is criminally negligent when he should have been aware of the risk but was not, while recklessness requires that the defendant actually be aware of the risk but disregard it. *See [People v.] Shaw,* 646 P.2d [375], 380 [(Colo. 1982)]. Thus, even if she should be, a person who is not actually aware that her conduct creates a substantial and unjustifiable risk is not acting recklessly." 999 P.2d at 219-20.

Colorado's courts have consistently held that negligence, even in the criminal context, is characterized by a degree of inaction rather than a conscious disregard. *People v. Shaw*, 646 P.2d 375, 380 (Colo. 1982) ("The distinction between acting recklessly and acting with criminal negligence is the difference between, on the one hand, becoming aware yet consciously disregarding a substantial and unjustifiable risk of death from one's conduct, and, on the other, failing to perceive, through a gross deviation from the reasonable care standard, a substantial and unjustifiable risk that death will result from one's conduct."); *People v. Ramirez*, 18 P.3d 822, 828 (Colo. App. 2000) (criminal negligence is when an actor has failed to become aware of the risk of harm; third-degree assault not applicable when evidence shows defendant placed a knife to victim's throat and victim's finger was cut when she pushed the knife away).

The Kansas Legislature's definition of recklessness comports with Colorado's requirement that, to be reckless, the actor must be aware of the risk, to-wit: "A person acts 'recklessly' or is 'reckless,' when such person *consciously disregards* a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) K.S.A. 2015 Supp. 21-5202(j).

Likewise, Kansas precedent has held that recklessness requires something more than negligence or carelessness. See *Robbins v. City of Wichita*, 285 Kan. 455, 470, 172 P.3d 1187 (2007) ("Recklessness is a lesser standard of conduct than intentional conduct and requires running a risk substantially greater than the risk which makes the conduct merely negligent or careless."); *State v. Remmers*, 278 Kan. 598, 601-02, 102 P.3d 433 (2004) (recklessness requires something more than negligence); see also *State v. Hernandez*, 40 Kan. App. 2d 525, 527-28, 193 P.3d 915 (2008). Indeed, the holding in *Remmers* echoes the Colorado definitions: "'It is the concept of *conscious disregard* that distinguishes recklessness from negligence. The negligent actor *fails to perceive* a risk that he ought to perceive. The reckless actor perceives or is conscious of the risk, but disregards it.'" (Emphasis added.) *Remmers*, 278 Kan. at 601-02 (quoting *State v. Larson*, 582 N.W.2d 15, 18 [S.D. 1998]).

Granted, prior panels of the Court of Appeals have apparently equated another state's criminal negligence with recklessness in this state. See *State v. Farley*, No. 109,655, 2014 WL 5345895, at *8 (Kan. App. 2014) (unpublished opinion), (Missouri statute, similar to Colorado statute, deemed equivalent to aggravated battery and therefore a person crime for criminal history purposes), *rev. denied* 302 Kan. 1014 (2015); *State v. Maudlin*, No. 104,062, 2011 WL 5143041, at *3 (2011) (unpublished opinion) (same). But it is the Kansas Legislature that establishes what constitutes a

19

criminal act in Kansas, not the courts. See *State v. Sexton*, 232 Kan. 539, 542-43, 657 P.2d 43 (1983) ("It has been the rule in Kansas that all crimes are established by legislative act. There are no common law crimes in the state, and there can be no conviction except for such crimes as are defined by statute.").

Given that our legislature has not criminalized the act of negligently causing bodily harm or injury to another person, even with a deadly weapon, *LaGrange* erred in finding that Colorado's third-degree assault was comparable to Kansas' aggravated battery. Moreover, there is no Kansas crime that is comparable to the portion of Colorado's third-degree assault that proscribes *negligently* causing bodily injury to another person by means of a deadly weapon. Thus, a comparison of the elements of the Colorado offense of third-degree assault to the elements of the Kansas offenses of battery and aggravated battery do not establish a comparability of the statutes as a whole. Moreover, the State has not asked us to find the Colorado statute to be divisible, nor did the Court of Appeals explain how to carve out only part of the elements of the out-of-state conviction. *Cf. State v. Dickey*, 301 Kan. 1018, 1037, 350 P.3d 1054 (2015) (adopting *Descamps v. United States*, 570 U.S. _____, 133 S. Ct. 2276, 186 L. Ed. 2d 438 [2013]) (under modified categorical approach, sentencing court permitted to look at limited class of documents if predicate crime's statute is divisible). Consequently, given that Kansas does not have a comparable offense, under either the 2011 or the 2015 version of 21-6811(e), the Colorado convictions for third-degree assault should not have been used in Rodriguez' criminal history calculation.

Reversed and remanded to the district court for resentencing with a criminal history score of D.