*In the matter of the Petition of* ANDREW DANIEL CHAP-
MAN *for a Writ of Habeas Corpus.*

No. 427.

1. HABEAS CORPUS—*Imprisonment, When not Illegal.* While *habeas corpus* is a proper remedy for every illegal imprisonment, both in civil and criminal cases, an imprisonment is not illegal in the sense of this rule merely because the process or order under which a party is held has been irregularly issued or is erroneous.

2. ———— *Order for Arrest—Defendant, When not Discharged.* Where a creditor in a civil action files in the office of the clerk of the court in which the action is pending an affidavit of his authorized agent, stating therein the nature of claim, that it is just, and the amount thereof, and showing that the defendant is guilty of one or more of the several fraudulent acts enumerated in section 148 of the code, and the affidavit also contains a statement of the facts claimed to justify the belief that the defendant is guilty of the fraudulent acts so charged against him, and there is also filed in said office a proper bond as required by law, the said clerk thereby acquires jurisdiction to issue an order for the arrest of the defendant; and, in such case, where the process so issued is regular upon its face, and is executed by the sheriff in the manner required by law, the defendant will not be discharged on *habeas corpus* merely because an attachment may have been previously issued against him in the same case and levied upon sufficient property to satisfy the plaintiff's claim.

MEMORANDUM.—Original application of Andrew Daniel Chapman for a writ of *habeas corpus*. Denied. The opinion herein, filed July 9, 1896, states the material facts.

*Mohler & Hiller,* for petitioner.

*Bond & Osborne,* and *Z. C. Milliken,* for respondent.

4—4 KAN. APP.

The opinion of the court was delivered by

CLARK, J.: On February 12, 1896, Andrew Daniel Chapman applied to this court for a writ of *habeas corpus*, alleging that he was illegally restrained of his liberty by the sheriff of Saline county. The writ was duly issued, returnable March 6, and the petitioner was admitted to bail pending the hearing and final decision of this court. From the sheriff's return to the writ and the agreed statement of facts submitted at the hearing, it appears that on January 6, 1896, the H. D. Lee Mercantile Company commenced an action in the district court of Saline county against the petitioner to recover the sum of $1,282.65 then due and unpaid on an account, and on the same day an attachment was duly issued out of said court and levied upon a stock of groceries and store fixtures, of the appraised value of $1,342.17, as the property of the petitioner. On January 16, Chapman filed his motion for a dissolution of the attachment. A hearing thereon was had, and on January 27 the court made, among others, the following findings of fact: That on January 4 the defendant was indebted to his brother in the sum of $400, to his wife in the sum of $105, and to his father in the sum of $614; that on that day he executed chattel mortgages on the property attached to secure the payment of the $505 to his wife and brother, and delivered possession of the property to the mortgagees; that he assigned to his father, in payment of the indebtedness due him, his book-accounts, the face value of which was about $1,300, but which did not exceed in actual value the sum of $600; that on January 6 he executed to W. H. Bishop a note for $100, which he also secured by a chattel mortgage on the property attached; that the statements made by the defendant to

the plaintiff as to his financial condition for the purpose of obtaining credit were fraudulent as against the plaintiff; that the mortgage given to Bishop was likewise fraudulent as against the plaintiff; that the allegations in the affidavit or attachment, "that the defendant had assigned, removed and disposed of his property with the intent to hinder, delay and defraud his creditors, and that he had fraudulently contracted the debt for which said action was brought," were true, and overruled the motion to dissolve the attachment. On the same day the plaintiff filed its motion for the sale of the attached property because of its perishable nature, and on January 28 the court ordered said property to be sold, the proceeds thereof to be held subject to the final order and judgment of the court. An order of sale was accordingly issued on January 30, and the property was duly sold on February 13, for $1,450 cash. On January 29, while the levy of the order of attachment was in full force and effect, the plaintiff filed in the office of the district clerk of Saline county an affidavit for an order of arrest, alleging therein that it had brought an action against Chapman to recover $1,282.55, and that said claim was just, due, and remained unpaid; that Chapman fraudulently contracted this said indebtedness and fraudulently incurred said obligation; that he had fraudulently assigned and removed and disposed of his property with the intent to defraud his creditors; that he had begun to convert his property into money for the purpose of placing it beyond reach of his creditors; that he had begun to dispose of his property with the intent to defraud his creditors; that the defendant had executed the several mortgages and the assignment above mentioned; that, at the time of the execution and delivery of said mortgages and as-

signment, all of the property owned by Chapman did not exceed in value the sum of $1,500, and that he was insolvent and unable to pay his debts. The affidavit also recited the issuance of the order of attachment in that action and the overruling of the defendant's motion to dissolve said order. A sufficient undertaking having been entered into by the plaintiff, an order of arrest was issued by the clerk, directed to the sheriff, which was in all respects in compliance with the requirements of the statutes, and commanded the officer to arrest the defendant and hold him to bail in the sum of $2,565.30, or, in default thereof, to commit him to the county jail, to be kept in custody until discharged by law. Chapman was taken into custody under this order, and on February 10 he applied to the probate court of Saline county for a writ of *habeas corpus*, which was duly issued, and on the following day a hearing was had and the petitioner was remanded to the custody of the sheriff. Upon the facts as above recited, the petitioner claims that he is illegally restrained of his liberty and is entitled to be discharged by proceedings in *habeas corpus*.

The statute provides that the plaintiff in a civil action for the recovery of money may, upon the existence of certain facts, at or after the commencement thereof, have an attachment against the property of the defendant, when certain conditions prescribed by the statute have been complied with. The order of attachment must require the officer to attach the property of the defendant, or so much thereof as will satisfy the plaintiff's claim, to be stated in the order, and the probable cost of the action, not exceeding $50. (Code, §§ 190, 191, 192, 193.) The requisite facts existing, and the conditions prescribed by law being fully complied with

in this case, the order of attachment was rightfully issued and it was also properly executed.

The statute likewise authorizes the arrest of a defendant in a civil action, either before or after judgment, when an affidavit of the plaintiff, his authorized agent or attorney, is filed in the office of the clerk of the court in which the action is brought, containing certain essential allegations. (Code, §§ 147, 148, 149.) The grounds upon which an order of arrest may be issued are quite similar to those which authorize proceedings in attachment. The object of the proceeding by order of arrest and by attachment is the same —to compel payment of a debt fraudulently contracted, or payment of which is fraudulently evaded; and while the statute does not in terms provide that the plaintiff shall not have an order of arrest in an action wherein he has taken defendant's property in attachment, we do not think that the law contemplates that the creditor may, before judgment, cause the arrest of the defendant, after having attached sufficient property to satisfy the full amount of his claim and the probable costs of the action. This seems to be the view taken by our supreme court in *State Bank v. Mottin*, 47 Kan. 455, where it was held that, while a creditor holding a chattel mortgage as security for his debt upon property belonging to the debtor can maintain an attachment against the same and other property of the debtor, if such a chattel mortgage is ample security to pay the creditor's claim in full, *any one interested* would be entitled, upon motion, to have so much of the property not embraced in the chattel mortgage as is not needed for the payment of the claim discharged from the attachment. In that case the court with approval cited *Gillespie v. Lovell*, 7 Kan. 419, where an attachment had been levied in

an action for the recovery of money and to foreclose a mechanic's lien, and it was said "it can hardly be supposed that the law intends to give the plaintiff a double security." But, if sufficient property is not levied upon to satisfy the order of attachment, or the property attached is incumbered by prior liens of any kind, probably an order of arrest might properly be issued and the defendant be held to bail in a sum double the amount of the debt remaining unsecured. (*Shedd v. McConnell*, 18 Kan. 594.)

What may be finally determined as to which has priority, the liens of the chattel mortgages or the attachment levy, is mere speculation. The court found the attached property to be of the value of about $1,500. It was appraised at $1,342.17 and was afterward sold by order of the court as perishable property for $1,450. The plaintiff's claim and the probable costs of the action amounted to only $1,332.65. Had the plaintiff admitted that the liens of the chattel mortgages had priority over the attachment levy, then, for the purpose of procuring an order of arrest, all of plaintiff's claim in excess of the amount due on the mortgages should have been considered as fully satisfied by virtue of the attachment proceedings, and the defendant ought not to have been held to bail in a sum exceeding double the amount due on the chattel mortgages, instead of double the amount of plaintiff's claim as set forth in the petition, as was required in this case. If by the attachment levy the plaintiff acquired a prior lien on the property attached, it had all the security to which it was justly entitled.

We think, as the affidavit for an order of arrest showed upon its face that the plaintiff had elected to pursue its remedy by attachment, and failed to show that its claim had not been amply secured by virtue.

of the levy of the attachment, a presumption would arise that sufficient property had been levied upon to satisfy the order of attachment. While the statements recited in the affidavit, if true, were sufficient to justify the belief that the defendant had fraudulently contracted the debt, and was seeking fraudulently to evade its payment, the further recital therein with reference to the attachment proceedings, in our opinion, tended to show that the plaintiff had obtained ample security for the payment of its claim, and that an order of arrest should not have been issued. Still, the affidavit was made by the authorized agent of the plaintiff, it contained the essential particulars required by the statute, and was filed in the proper office. Under section 148 of the code, the clerk has jurisdiction and authority to pass upon the question as to the sufficiency of the affidavit, and having done this, and the proper bond having been filed, he also had jurisdiction to issue the order of arrest. The process was regular upon its face, and there is no claim that the sheriff in any way failed to execute it in the manner required by law. Such being the case, the order of arrest was not void, nor were the proceedings thereunder mere nullities. While *habeas corpus* is a proper remedy for every illegal imprisonment, both in civil and criminal cases, an imprisonment is not illegal in the sense of this rule merely because the process or order under which a party is held has been irregularly issued or is erroneous. The authorities are uniform that this writ is not intended to have the force or operation either of an appeal or a writ of error, nor is it a substitute for either. (*Ex parte Maxwell*, 11 Nev. 428; *Ex parte Ah Sam*, 24 Pac. Rep. 276; *Sennott's Case*, 146 Mass. 489; *Ex parte McCullough*, 35 Cal. 97; *Ex parte Crouch*, 112 U. S. 178; *In re Morris*,

39 Kan. 28; *Barton v. Saunders*, 16 Ore. 51.) In *Peltier v. Pennington*, 14 N. J. Law, 312, it is said that a defendant will not be discharged on a writ of *habeas corpus* where the writ on which he is detained is in itself a legal and proper one, and the court out of which it issued is of competent jurisdiction, and where the only matter in dispute is the regularity of the process and the validity of the arrest. In *In re Morris*, supra, the following language is used:

"We can question any defects which may affect the jurisdiction of the court or officer and which would render the proceedings void. The jurisdiction having been established, we cannot inquire into the regularity of the proceedings. If there have been errors committed, even flagrant ones, the remedy for correcting them is not to be found in proceedings in *habeas corpus.*"

In *The State, ex rel., v. Bridges*, 64 Ga. 146, we find the following language:

"Where the imprisonment takes place on mesne process, the range of inquiry upon *habeas corpus* is merely whether the plaintiff has brought a proper suit in the proper court, and has taken all the steps in the procedure which the law lays down as conditions precedent. These things appearing, the lawfulness of the custody follows necessarily. The investigation relates to what has been done, not to whether it ought to have been done."

In *The People, ex rel., v. Liscomb*, 60 N. Y. 559:

"If the process is valid on its face it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. Error, irregularity or want of form is no objection; nor is any defect which may be amended or remedied by the court from which it issues."

In Church on Habeas Corpus, § 383, the author says:

"To obtain a discharge on *habeas corpus* from an ar-

rest under a body execution, the defects in the execution must be matters of substance required by law, rendering the process void, and not merely voidable; for, in the latter case, the remedy is by motion to set it aside."

A New York statute in effect provided that a warrant for the arrest of the defendant in a civil action should not be issued until after execution against his property, directed to the proper officer of the county in which the defendant resided, had been returned unsatisfied. A defendant was arrested upon process regular in all respects, except that no execution against his property had been issued as required by the statute, and it was held that, although the issuance of the process under which he was held was irregular, it was not void, and that he was therefore not entitled to be discharged on *habeas corpus*, but that his proper remedy was to apply to the court to have the order of arrest vacated. (*Bank v. Jenkins*, 18 Johns. 304.) The petitioner has cited, in support of his application, the cases of *In re Grey*, 41 Kan. 461; *In re McMicken*, 39 id. 406; *Ex parte Randolph*, 2 Brock. 447. In the Grey case, the order of arrest was issued in accordance with section 27 of the justices' act, which commanded the constable to arrest the execution debtor only in case the judgment should not be paid or an amount of personal property sufficient to satisfy the judgment could not be found within the county whereon to levy execution. The constable levied on property which was subsequently replevied by a third party, claiming to be its owner, and it was held that, while that levy remained in full force and subsisting and no further effort was made to obtain satisfaction of the judgment from other personal property of the judgment debtor, the officer had no authority to arrest the defendant. In the Randolph case, it was held that the

auditor of the treasury, after having settled an account of a public officer and closed 'it, had no authority thereafter to open it, restate it, and, upon the account thus restated, to institute proceedings by a warrant of distress against the debtor ; and it was there said that, upon *habeas corpus*, the question is not whether there is error in the proceedings, but whether there was jurisdiction in the case in the auditor of the treasury. In the McMicken case the petitioner had been informed against for crime, and the district court overruled his motion to discharge him under section 220 of the criminal code, which reads :

"If any person, under indictment or information for an offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found or information filed, he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term."

The court said that there could be no question that the prisoner was entitled to his discharge upon his motion, as the record clearly shows that the delay had not happened upon his application or been occasioned by the want of time to try the case ; and a majority of the court reached the conclusion that, as the petitioner was entitled to his discharge in the district court, he ought to be released in his proceeding in *habeas corpus*, as that proceeding was the only one which afforded him a speedy remedy ; that, if his only remedy was by appeal, he must continue wrongfully restrained of his liberty until the case was finally determined by the district court, as an appeal can be taken by defendant only after judgment ; that it

would be a palpable violation of the bill of rights, and also of the statute, to require an accused who is entitled to his discharge, so far as relates to the offense for which he was committed, to be restrained of his liberty indefinitely at the instance of the state, or upon the order of the court, to await his final trial or determination of the case against him.  While the decision in the McMicken case was not unanimous, a much stronger showing was made in that case than in this one.  There the petitioner had applied to the court in which the criminal action was pending against him for his discharge under the statute.  The court erroneously overruled his motion.  In this case no application for relief was made to the court in which the civil action was pending against the petitioner.  Section 173 of the code provides that "A defendant may, at any time before judgment, apply on motion to the court in which the suit is brought, if in session, and in vacation to a judge thereof, to vacate the order of arrest or to reduce the amount of bail."  Under this section of the statute, ample authority is given the trial court to correct any error which may have been committed by the clerk by vacating the order of arrest, if it should appear that the plaintiff had already ample security for the payment of its claim, or to reduce the amount of bail, if for any cause it should be found too excessive.  In *Barton v. Saunders*, supra, it was said :

"Where a court acquires jurisdiction over the subject-matter and person, it becomes its right and duty to determine every question which may arise in the cause without any interference from any other tribunal.  Writs of *habeas corpus* cannot reach errors or irregularities which render proceedings voidable merely, but only such defects in substances as render the proceedings or judgment absolutely void.  It is

unanswerable return to a writ of *habeas corpus* that the court had jurisdiction in which the action was pending and out of which the writ of arrest was issued, and was competent to correct any error or abuse of its powers or to set it aside."

As already said, the petitioner has made no application to the district court for the relief to which he was entitled under section 173 of the code. Should he do so, doubtless the irregularities of which he complains would be rectified. A much more speedy remedy is afforded under that section than could be had by proceedings in *habeas corpus*, even if the latter were a proper remedy.

We are, however, of the opinion that the restraint of the petitioner is not illegal in the sense in which the word is used in section 660 of the code, that he is not entitled to be discharged in this proceeding, and that he should be remanded to the custody of the sheriff.

All the Judges concurring.