No. 35,975

ALEX JAMES (sometimes spelled Aleck James), *Appellee,* v. MILTON F. AMRINE, Warden of the Kansas State Penitentiary, *Appellant.*

(140 P. 2d 362)

Opinion filed July 27, 1943.

*Shelley Graybill,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, and *John H. Murray,* county attorney, were on the briefs for the appellant.

*C. M. Stokes,* of Topeka, argued the cause for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an appeal by the warden of the penitentiary from an order discharging a prisoner in a proceeding in habeas corpus. The primary question is whether the petitioner's conviction and sentence were void because of irregularity in the information.

In June, 1925, Alex James, the appellee, was tried and convicted by a jury in Shawnee county, Kansas, on a charge of murder in the first degree. On July 11, 1925, he was sentenced to life imprisonment and was regularly committed to the Kansas State Penitentiary on February 2, 1926. He remained incarcerated there until discharged under an order of June 5, 1943, from which this appeal was taken.

Appellee's petition for a writ was filed in the district court of Leavenworth county on April 13, 1943. The writ was issued on the same day and the matter was heard on April 23, 1943, the petitioner appearing in person and by his attorney and the warden appearing by the county attorney and the assistant county attorney. No oral testimony was received. The case was determined solely on a question of law. The trial court found that "said restraint is illegal, void and of no effect and that the district court of Shawnee county, Kansas, was without jurisdiction to render any judgment or conviction under the information filed in said action," and ordered the warden to release the petitioner "within ten (10) days from the receipt" of the certified copy of the journal entry. The order further directed that a certified copy of the order be forwarded to the county attorney of Shawnee county. A few days after the order was entered the warden released the prisoner. The record before us does not disclose the exact date of the release, but we were advised by counsel that it was several days prior to the notice of appeal which was filed on June 12, 1943. There was no motion in the court below for stay of execution of the order of discharge pending appeal nor was there any motion to require bond for delivery of petitioner in case the order of discharge was set aside upon appeal.

The issue turns upon an inaccuracy—an absurd inaccuracy—in the information upon which appellee was tried in June, 1925. The information, which was dated *June 8, 1925,* recited that the murder was committed "on the —— day of *December, 1925*"—about six months after the trial! The question is whether all proceedings in the criminal trial were void because of this defect in the information.

The general rules or principles of law relating to this unusual situation are well established. The question is largely one of applicability. It is well settled that a proceeding in habeas corpus is not to be regarded as a substitute for appellate review. (25 Am. Jur. 162 *et seq.* and 173 *et seq.; Levell v. Simpson,* 142 Kan. 892, 894, 52 P. 2d 372.) Where a prisoner is held in custody upon regular commitment after conviction and sentence he may not invoke habeas corpus to secure revision of errors that might have been reached by amendment or appeal, where the court which imposed the sentence had jurisdiction to impose the sentence. It is only in cases where the information, the indictment, or the proceedings were otherwise void so that the court acquired no jurisdiction of the person or the cause, that the remedy of habeas corpus becomes available. We are here speaking, of course, with reference only to alleged insufficiency of the information or of the proceedings in some other respect and not with reference to alleged denial of counsel, due process, or other constitutional guaranty. To state it in a slightly different way, habeas corpus cannot be used to review nonjurisdictional errors and irregularities leading up to judgment. (25 Am. Jur. 159, 162 *et seq.; In re Bion,* 59 Conn. 372, annotation; 11 L. R. A. 694 and cases cited p. 700; *U. S. v. Lair,* 195 Fed. 47; *Ex Parte Parks,* 93 U. S. 18, 23 L. Ed. 787; 76 A. L. R. 469.) The general rule has been variously stated. In *Franklin v. Biddle,* 5 F. 2d 19, it was said that the question is whether the indictment was sufficient to give the court jurisdiction to enter upon inquiry and make a decision. Our own decisions are in line with the general rule. See *In re Bolman,* 131 Kan. 593, 595, 292 Pac. 790; *In re Wright,* 74 Kan. 409, 412, 89 Pac. 678; *In re Terry,* 71 Kan. 362, 365, 80 Pac. 586; *In re Morris,* 39 Kan. 28, 30, 18 Pac. 171; Prohibitory Amendment Cases, 24 Kan. 700, 724; *In re Spaulding,* 75 Kan. 163, 166, 88 Pac. 547; *In re White,* 50 Kan. 299, 301, 32 Pac. 36; *Loftis v. Amrine,* 152 Kan. 464, 466, 105 P. 2d 890; *Engels v. Amrine,* 155 Kan. 385, 125 P. 2d 379.

The trial court recognized the general rule and took the view the defect in the information vitiated the criminal action, rendered the sentence and commitment void and the imprisonment unlawful, and made habeas corpus a proper remedy.

We are unable to join in the conclusion reached by the able and experienced judge of the trial court, for whose considered views we entertain great respect. In our opinion, the defect in the informa-

tion—so obviously a clerical error—did not render the information void or vitiate the subsequent proceedings. The inaccuracy would have been subject, without question, to correction by amendment. More than that, it is not reasonable to determine the issue here on the sole basis of the mistake in date without any reference to all the other allegations of the information. It is not necessary to set out the information in full, but no question is raised as to its sufficiency in any other particular. All the essentials constituting murder in the first degree were clearly charged—a deliberate and premeditated assault, with malice aforethought, with a deadly weapon, the infliction of a mortal wound upon an identified victim, and the death of the victim within "about thirty-three hours" thereafter as a result of such assault. On this information defendant went to trial. The journal entry—with its full recitals—of course discloses no objection having been made to the information, and appellee does not contend that the journal entry is not complete. The defendant was represented by able counsel. The journal entry discloses that the trial consumed a number of days. The verdict was returned on June 15, 1925, and upon motion of the defendant sentence was deferred for twelve days and was not actually pronounced until July 11, nearly a month after the verdict was returned. Before sentence the defendant was asked whether he had anything to say as to why sentence should not be pronounced and he answered in the negative. Commitment—the regularity of which on its face is beyond question—followed. Now, for the first time, after eighteen years have passed, the information is challenged. We have no hesitancy in saying that the information was sufficient to give jurisdiction, that the defendant's rights were not prejudiced by the clerical error which obviously was not noticed at the time by anybody, and that the most that could be claimed against the information is that it was voidable. That would not make it subject to collateral attack. While the record of the trial, other than as already stated, is not before us and we do not know what the evidence showed as to the date when the murder was committed, we are under no judicial compunction to ignore realities which require no proof. To say that we must give controlling and exclusive weight to a palpably clerical error—the specification of an impossible date—in disregard of all other allegations of the information, amounts, practically speaking, to saying that we must indulge the preposterous assumption that the defendant, the court, the jury, the counsel, were engaged, for days,

in a trial over a murder which had not yet been committed! We shrink from ascribing such potency to the slip of a pen.

Before leaving the immediate point it is well to note that the statute of limitations does not run on first-degree murder and that therefore no issue can here be involved as to whether, if the correct date of the crime had been alleged, a bar to prosecution might have been asserted.

In *People v. Hunt*, 153 Misc. 783, 275 N. Y. S. 115, a habeas corpus proceeding wherein the petitioner, who had been convicted of burglary and duly sentenced, challenged the indictment on the ground that no date was specified when the crime was committed, it was held that the defect was not sufficient to deprive the court of jurisdiction. In the opinion it was said: "the accused should not be heard to complain that a constitutional right has been infringed by the form of an indictment if that form does not preclude the accused from asserting in some manner every substantial right he may have." In the instant case the accused went to trial and through the trial without objection to the information. Certainly he was not precluded from "asserting in some manner every substantial right which he had," nor, if entitled to review by appeal, was that relief denied him.

The case of *Ex Parte Sneed*, 46 Ok. Cr. 53, 287 Pac. 1062, is "on all fours" with the one before us. In 1923 Sneed was convicted and sentenced to life imprisonment for first-degree murder. In 1927 he brought an action in habeas corpus, contending that the trial court in 1923 never acquired jurisdiction because the information which was filed on July 26, *1923*, charged that the offense was committed "on November 15, *1923* and November 17, *1922*." It will be noted that one of the dates upon which it was alleged the crime was committed was about four months in the future. While one of the dates specified was prior to the charge the two dates were conjunctive and therefore the time alleged was as impossible as in the instant case. The writ was refused, the court saying: "these questions cannot be considered by this court; . . . an examination of the record discloses that the information did charge the petitioner with the commission of the offense for which he was convicted," and that the trial court had jurisdiction to try the defendant. Many cases are cited in the opinion in support of the proposition that in such situations "the writ of habeas corpus . . . should be limited to cases

in which the judgment and sentence of the court attacked is clearly void."

We pass to other questions here involved which merit some attention. As already noted, the trial court directed the release of the petitioner "within ten (10) days from receipt" of the journal entry. While the record does not specifically so disclose the fact, we assume that the ten-day period was provided in order to give the state time for any further procedural steps available which it desired to take. No immediate steps were taken, the warden released the prisoner, and several days thereafter filed notice of appeal to this court. Clearly the warden acted within the letter of the order which directed release *within* ten days. The question arises whether it can be said that the warden, by releasing the prisoner before taking an appeal and without seeking stay of execution, so acquiesced in the judgment as to defeat the right of appeal.

In many jurisdictions it is held that in the absence of statutory provision therefor, no appeal lies from an order discharging or refusing to discharge a prisoner in habeas corpus proceedings (2 Am. Jur. 922 *et seq.*). Indeed, some courts have severely criticized statutes which permit such appeal, especially where the order directs discharge of the prisoner (2 Am. Jur. 923, 34 L. R. A., n. s., 755). The criticism is made on the ground that the delay incident to appeal may defeat the fundamental right protected by the writ. In this state, however, the right of appellate review in habeas corpus cases has been recognized under the general appeal provisions of the civil code (G. S. 1935, 60-3302, 60-3303) even though the statute (G. S. 1935, 60-2201 *et seq.*, Civ. Code, art. 22) dealing with habeas corpus does not specifically provide for appeals from the district court. (*In re Petty,* 149 Kan. 875, 89 P. 2d 835; *Bowers v. Wilson,* 143 Kan. 732, 739, 56 P. 2d 1212; *Miller v. Gordon,* 93 Kan. 382, 144 Pac. 274. See, also, *In re Wadleigh,* 108 Kan. 682, 197 Pac. 217.)

The next proposition to be noted is that by the great weight of authority an order of unconditional discharge in a habeas corpus proceeding may not be stayed pending appeal, in the absence of statute specifically providing therefor. (*Dickson v. Mullings,* 66 Utah, 282, syl. ¶ 6, 241 Pac. 840, and cases cited on page 289; 43 A. L. R. 136; 3 Am. Jur. p. 204, ¶ 556; annotation, 63 A. L. R. 1480.) Nor, where stay is specifically authorized, does an appeal automatically effect a stay. (*Dickson v. Mullings,* supra, syl. ¶ 5; annotation,

63 A. L. R. 1478 *et seq.*)  In *People, ex rel. Sabatino, v. Jennings,* 246 N. Y. 258, 156 N. E. 613 (annotated 63 A. L. R. 1458 *et seq.*) it was said in the opinion by Mr. Chief Justice Cardozo:

"It would be intolerable that a custodian adjudged to be at fault, placed by the judgment of the court in the position of a wrongdoer, should automatically, by a mere notice of appeal, prolong the term of imprisonment, and frustrate the operation of the historic writ of liberty. 'The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty.' . . .

"A statute suspending the effect of the discharge by the mere force of an appeal would be at war with the mandate of the Constitution whereby the writ of habeas corpus is preserved in all its ancient plenitude."

Many supporting cases were there cited.

Our statutes dealing with habeas corpus have no specific provision for stay of execution upon appeal from order discharging a prisoner. Certainly under the authorities above cited the order of discharge in the instant case would not automatically have been stayed even if the appeal had been taken prior to release of the prisoner by the warden. We need not here determine whether in the absence of statute specifically authorizing it a stay might have been granted upon motion. In any event we assuredly cannot say that discharge of the prisoner, prior to taking the appeal, had the effect of foreclosing appeal. This conclusion is fortified by various other elements here present. We are not here dealing with a judgment in which the immediate parties are alone concerned. This is not a case where a private litigant may elect to accept a judgment or to reject it and appeal, and where by accepting benefits or acquiescing he may forfeit the right to appeal. Here the warden had no such election. He was under mandate to release the prisoner. "The right to appeal is not waived by acts which appellant was under a duty to perform." (4 C. J. S. 397; *Stanhope v. Rural High School,* 110 Kan. 739, 205 Pac. 648, syl. ¶ 1.) Also, see cases cited 4 C. J. S. 397, note 21, in support of the proposition that "in order to be a bar to the right of appeal on the ground of acquiescence . . . the acts relied on, as a waiver or estoppel on such ground, must be such as to clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence." No such situation barring appeal exists here. Nor is there any doubt that the warden had sufficient interest as a public officer to bring the appeal. (*Miller v. Gordon,* supra, syl. ¶ 2; 4 C. J. S. 387.)

It follows from what has been said that the court below erred in

ordering release of the petitioner and that the release of the prisoner prior to appeal did not foreclose appeal from the order of discharge.

The judgment is reversed with directions to set aside the order of discharge and to deny the writ.

SMITH and THIELE, JJ., dissent from paragraph 5 of the syllabus and from the corresponding portion of the opinion.