IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,933

In the Matter of the Care and Treatment
of THOMAS EASTERBERG.

SYLLABUS BY THE COURT

1.

Under article 3, section 3 of the Kansas Constitution, the Kansas Supreme Court has the power to hear and decide an original action in habeas corpus.

2.

Kansas Supreme Court Rule 9.01(b) (2018 Kan. S. Ct. R. 58) provides that in an original action, an appellate court ordinarily will not exercise original jurisdiction if adequate relief appears to be available in the district court. If relief is available in the district court, a petition must state the reason why the action is brought in the appellate court instead of in the district court.

3.

In a proceeding to commit a person under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2017 Supp. 59-29a01 et seq., the State has the burden to prove beyond a reasonable doubt that: (1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior.

1

4.

The KSVPA requires the State to prove that a person actually committed the acts constituting a sexually violent offense before that person is subject to involuntary commitment under the KSVPA.

5.

A "sexually violent offense" is defined in the KSVPA as any of the sex related offenses listed in K.S.A. 2017 Supp. 59-29a02(e) and "any act which either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this act, has been determined beyond a reasonable doubt to have been sexually motivated." K.S.A. 2017 Supp. 59-29a02(e)(13).

6.

If the issue of a crime's sexual motivation is litigated in a person's criminal case, the State is estopped from relitigating that point in a KSVPA proceeding to prove that a crime is a sexually violent offense for purposes of the KSVPA.

Original proceeding in habeas corpus. Opinion filed March 29, 2019. Remanded to the district court with directions.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Dwight R. Carswell*, assistant solicitor general, argued the cause, and *Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

PER CURIAM: This is an original proceeding in habeas corpus. Thomas Easterberg argues he must be released from confinement because the State has no statutory basis to civilly commit him under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2017 Supp. 59-29a01 et seq.

On present showing, we hold that there is a fact question for the district court to resolve in order to determine whether Easterberg's writ should be granted; therefore, we remand this action to the district court with directions.

FACTUAL AND PROCEDURAL OVERVIEW

In 2007, the State charged Easterberg with multiple crimes that included the sexually violent offenses of rape and aggravated criminal sodomy. As part of a plea agreement, the State dismissed these charges in exchange for Easterberg's plea to kidnapping and aggravated battery. Easterberg was sentenced to 114 months' imprisonment for his convictions. On the Sentencing Guidelines Journal Entry of Judgment for these convictions, the district court checked the boxes indicating Easterberg's crimes were not sexually motivated for purposes of the Kansas Offender Registration Act (KORA), K.S.A. 22-4902(c)(14).

Prior to Easterberg's scheduled release from prison, the Kansas Department of Corrections provided notice to the Kansas Attorney General that Easterberg may meet the criteria of a sexually violent predator under the KSVPA. Subsequently, the Attorney General's Office filed a petition seeking to involuntarily commit Easterberg as a sexually violent predator.

Easterberg moved to dismiss the action, arguing that the State had no statutory basis to file the petition for his commitment. He contends that the State may only initiate proceedings under the KSVPA when a person has been:  (1) convicted of a sexually violent crime; (2) found incompetent to stand trial; (3) found "not guilty" by reason of insanity; or (4) found "not guilty" by reason of a mental disease or defect. Because none of the statutory means of initiating the commitment process applied to him, Easterberg asserts that his case must be dismissed. Further, Easterberg claims that the fact that the

3

sentencing court in the criminal case specifically found the crimes of conviction were not sexually motivated precludes a contrary finding by the district court in this case.

The district court denied Easterberg's motion to dismiss and found probable cause existed to believe Easterberg was a sexually violent predator. Following that probable cause determination, Easterberg filed this original action. After considering the State's response to the writ of habeas corpus and Easterberg's reply, this court ordered briefing and oral arguments.

ORIGINAL JURISDICTION

The State argues that this court lacks jurisdiction to consider Easterberg's habeas corpus petition. Alternatively, the State asserts that, even if this court has jurisdiction, it should decline to exercise it. Given that our acceptance of either argument would end this matter, we consider them first.

We start with the State's contention that this court does not have jurisdiction to entertain Easterberg's petition for writ of habeas corpus. Recently, in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), we sought to rectify the sometimes careless use of jurisdictional arguments. We clarified that subject matter jurisdiction means "'the power of the court to hear and decide a particular type of action,'" and we declared that "the Kansas Constitution dictates the existence of subject matter jurisdiction." 304 Kan. at 784, 813. In this instance, our constitution is quite explicit in dictating the existence of our jurisdiction in habeas corpus actions, to-wit: "The supreme court shall have original jurisdiction in proceedings in quo warranto, mandamus, and habeas corpus; and such appellate jurisdiction as may be provided by law." Kan. Const. art. 3, § 3.

The State acknowledges that constitutional mandate but nevertheless argues that, when our Kansas Constitution was adopted in 1859, Easterberg's petition "would not

4

have been considered a proceeding in habeas corpus." Specifically, the State suggests that, in 1859, "habeas corpus was *generally* not available to challenge a person's detention pursuant to legal process by a court of competent jurisdiction; instead, the writ was *primarily* limited to illegal executive detention and detention by courts that lacked jurisdiction." (Emphasis added.) Of course, such equivocal notions as "generally" and "primarily" are inconsistent with the foundational concepts of subject matter jurisdiction, e.g., jurisdiction cannot be waived or stipulated to and a judgment without subject matter jurisdiction is void. See *Dunn*, 304 Kan. at 784 ("The existence of subject matter jurisdiction cannot be waived . . . . A conviction obtained in a court without subject matter jurisdiction is void."). If a court *can* consider a person's challenge to being unlawfully detained—for instance because of exceptional circumstances or for secondary reasons—that court does not lack subject matter jurisdiction over the cause of action.

The State relies heavily on federal precedent to support its historical argument that this court's original jurisdiction in habeas corpus proceedings is limited to the primary purpose for which that proceeding was used in 1859. For instance, it cites to the dissent in *Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008), a case dealing with the Suspension Clause in the United States Constitution. That minority opinion argued that "[t]he nature of the writ of habeas corpus that cannot be suspended must be defined by the common-law writ that was available at the time of the founding [of the United States]." 553 U.S. at 844 (Scalia, J., dissenting). Pointedly, however, the State does not mention *Boumediene*'s majority opinion which noted the inherent shortcomings in the historical record of 18th century habeas proceedings and which, in discussing adequate substitutes for habeas corpus, posited that "common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." 553 U.S. at 779; see also *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963) ("[Habeas corpus] is not now and never has been a static, narrow, formalistic remedy.").

5

Nevertheless, we are presented with a question of Kansas constitutional law, which is uniquely ours to decide. Even if one adopts an originalist viewpoint, the touchstone would be what was in the minds of the drafters of our constitution, rather than the intent of our nation's founders nearly a century earlier. Granted, federal decisions may inform this court's interpretation of Kansas law. For instance, in *Lonchar v. Thomas*, 517 U.S. 314, 322, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996), cited by the State, the Supreme Court stated that the "most basic purpose" of the writ of habeas corpus is "avoiding serious abuses of power by a government." And contrary to the State's contention, *In re Chapman, Petitioner*, 156 U.S. 211, 215, 15 S. Ct. 331, 39 L. Ed. 401 (1895), declared that, although generally a writ of habeas corpus "will not lie where there is a remedy by writ of error or appeal," there are exceptional cases in which the habeas corpus may be used despite the existence of such a remedy.

With respect to this state's caselaw, the parties do not direct our attention to any precedent explicitly discussing article 3, section 3 of the Kansas Constitution in the context of determining the scope of our original jurisdiction to consider an action in habeas corpus. The State points to *State v. Shores*, 187 Kan. 492, 493, 357 P.2d 798 (1960), which declared that the notion "[t]hat habeas corpus is not a substitute for an appeal is elementary," and to *James v. Amrine*, 157 Kan. 397, 399, 140 P.2d 362 (1943), which recognized the general rule that a habeas corpus proceeding is not a substitute for direct appeal and "cannot be used to review nonjurisdictional errors and irregularities leading up to judgment." Both cases are factually distinguishable and neither mentions our constitutional grant of jurisdiction.

The State also relies on a decision from our State's first iteration of a Court of Appeals, *In re Chapman, Petitioner*, 4 Kan. App. 49, 46 P. 1014 (1896). But *Chapman*, like other cases of that era, was based on *statutory* law. It specifically cites to section "660 of the code," which at that time provided: "Every person restrained of his liberty under any pretense whatever may prosecute a writ of *habeas corpus* to inquire into the

6

cause of the restraint, and shall be delivered therefrom when illegal." G.S. 1899, ch. 80, art. 30, sec. 660; see also G.S. 1899, ch. 80, art. 1, sec. 1, annot. ("This is chapter 80, G.S. 1868, except as noted at the end of any section."). The court in *Ex parte Phillips*, 7 Kan. 48, 49-50, 1871 WL 692 (1871), explained that, although this court has original jurisdiction in habeas corpus proceedings, its power is fixed by statute in Section 671 of the Civil Code, which "forbids an inquiry (at this time) into the alleged errors in the proceedings of the district court." That section provided, in relevant part, as follows:

> "No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:  . . . *second*, upon any process issued on any final judgment of a court of competent jurisdiction; or, *third*, for any contempt of any court, officer or body having authority to commit; . . . *fourth*, upon a warrant or commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information." G.S. 1899, ch. 80, art. 30, sec. 671.

Even in the face of statutory constraints, however, this court has granted habeas corpus relief when necessary to provide timely relief from an illegal imprisonment. For instance, in *In re McMicken, Petitioner*, 39 Kan. 406, 408, 18 P. 473 (1888), the court opined that there was "no question that the petitioner was entitled to his discharge" for a speedy trial violation and "[t]he only serious question in the case [was] whether *habeas corpus* is the proper remedy." A majority of the *McMicken* court held habeas corpus relief was proper because "that proceeding is the only one which affords him a speedy remedy." 39 Kan. at 409. The majority reasoned that

> "it would be a palpable violation of the bill of rights, and also of the statute, to require an accused who is entitled to his discharge, so far as relates to the offense for which he was committed, to be restrained of his liberty indefinitely at the instance of the state, or upon the order of the court, to await a final trial, or determination of the case against him." 39 Kan. at 409.

Relatively recent cases have also invoked our original jurisdiction to hear habeas corpus proceedings, notwithstanding lower court proceedings that could have been appealed. *In re Habeas Corpus Petition of Mason*, 245 Kan. 111, 113, 775 P.2d 179 (1989), held habeas corpus was an appropriate remedy for challenging a trial court's pretrial denial of a claim of double jeopardy, reasoning that "[t]he defendant would otherwise have no appellate forum in this state in which to assert a valid double jeopardy claim before being subjected to such jeopardy." In *In re Weimer*, No. 106,862, 2012 WL 6061619 (Kan. App. 2012) (unpublished opinion), the Court of Appeals initially denied Weimer's petition for habeas corpus on the grounds that it was interlocutory in nature. Upon petition for review to this court, Weimer argued that he was being wrongfully detained on a charge in violation of the compulsory joinder statute, which codified double jeopardy protections. This court remanded to the Court of Appeals for consideration of the merits of Weimer's writ. See also *In re Berkowitz*, 3 Kan. App. 2d 726, 730-31, 602 P.2d 99 (1979) (holding habeas corpus is an appropriate vehicle to challenge a trial court's pretrial denial of a double jeopardy claim).

In short, the State has not convinced us to look behind the plain language of our constitution: "The supreme court shall have original jurisdiction in proceedings in . . . habeas corpus." Kan. Const., art. 3, § 3. In other words, this court has the power to hear and decide an action in habeas corpus. Granted, this court has the authority—and responsibility—to make certain that a habeas corpus proceeding is the appropriate vehicle for the relief being sought. Indeed, we have provided a rule to that effect. Supreme Court Rule 9.01(b) (2018 Kan. S. Ct. R. 58-59) provides that in an original action, "[a]n appellate court ordinarily will not exercise original jurisdiction if adequate relief appears to be available in a district court. If relief is available in the district court, a petition must state . . . the reason why the action is brought in the appellate court instead of in the district court." Accordingly, we turn to the State's argument that we should decline to exercise our original jurisdiction in this instance.

8

Here, the district court denied Easterberg's motion to dismiss and found probable cause existed to believe Easterberg was a sexually violent predator. Easterberg argues that the State was without authority to commence the KSVPA action because he did not meet the initial conditions precedent. He essentially contends that he was ineligible to be brought before the district court for a probable cause hearing, which rendered the proceedings illegal and the accompanying incarceration without possibility of bond unlawful. If Easterberg is correct, it is no remedy to say that he can appeal the outcome of the illegal proceeding. Like the double jeopardy circumstance, a person claiming to be an ineligible patient under the KSVPA should be able to make that challenge before being subjected to KSVPA proceedings, during which the proposed patient has been deprived of his or her liberty interest, as explained below. Consequently, we proceed to consider Easterberg's petition.

ELIGIBILITY FOR SEXUALLY VIOLENT PREDATOR COMMITMENT

Easterberg contends that he did not meet the basic statutory eligibility requirements to be subject to the KSVPA, rendering these proceedings unlawful and the ensuing court-ordered incarceration illegal. Principally, he contends that his convictions for kidnapping and aggravated battery were not sexually violent crimes and, therefore, could not trigger the KSVPA proceedings against him.

The question presented turns on our interpretation of various statutory provisions. Accordingly, we begin by looking at the statutory scheme of the KSVPA, K.S.A. 2017 Supp. 59-29a01 et seq., which "is an act for the restraint of sexually violent predators aimed at identifying and involuntarily civilly committing such predators to 'potentially long term control, care and treatment' 'in an environment separate from persons involuntarily committed' for other reasons." *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011) (quoting K.S.A. 59-29a01). K.S.A. 2017 Supp. 59-29a02(a) defines a "sexually violent predator" as "any person who has been convicted

9

of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." In turn, a "sexually violent offense" is defined as any of the sex-related offenses listed in K.S.A. 2017 Supp. 59-29a02(e), which include, *inter alia*, rape, aggravated criminal sodomy, and "any act which either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this act, has been determined beyond a reasonable doubt to have been sexually motivated." K.S.A. 2017 Supp. 59-29a02(e)(1), (5), (13). "'Sexually motivated' means that one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2017 Supp. 59-29a02(d). The phrase "[l]ikely to engage in repeat acts of sexual violence" means a person's "propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." K.S.A. 2017 Supp. 59-29a02(c).

K.S.A. 2017 Supp. 59-29a03(a) establishes the practical means for commencing an action to commit a sexually violent predator by providing the procedure for initially notifying the attorney general that certain persons may be eligible for involuntary commitment, to-wit:

> "(a) When it appears that a person may meet the criteria of a sexually violent predator as defined in K.S.A. 59-29a02, and amendments thereto, the agency with jurisdiction shall give written notice of such to the attorney general and the multidisciplinary team established in subsection (f), 90 days prior to:

> (1) The anticipated release from total confinement of a person who has been convicted of a sexually violent offense, except that in the case of persons who are returned to prison for no more than 90 days as a result of revocation of postrelease supervision, written notice shall be given as soon as practicable following the person's readmission to prison;

10

(2) release of a person who has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial pursuant to K.S.A. 22-3305, and amendments thereto;

(3) release of a person who has been found not guilty by reason of insanity of a sexually violent offense pursuant to K.S.A. 22-3428, and amendments thereto; or

(4) release of a person who has been found not guilty of a sexually violent offense pursuant to K.S.A. 22-3428, and amendments thereto, and the jury who returned the verdict of not guilty answers in the affirmative to the special question asked pursuant to K.S.A. 22-3221, and amendments thereto."

K.S.A. 2017 Supp. 59-29a03(h) also provides that "[t]he provisions of this section are not jurisdictional and failure to comply with such provisions not affecting constitutional rights in no way prevents the attorney general from proceeding against a person otherwise subject to the provisions of the Kansas sexually violent predator act."

K.S.A. 2017 Supp. 59-29a04(a) provides when and where the attorney general may file a petition alleging a person is a sexually violent predator:

"When the prosecutor's review committee, appointed as provided in K.S.A. 59-29a03(g), and amendments thereto, has determined that the person meets the definition of a sexually violent predator, the attorney general, within 75 days of the date the attorney general received the written notice as provided in K.S.A. 59-29a03(a), and amendments thereto, may file a petition in the county where the person was convicted of or charged with a sexually violent offense alleging that the person is a sexually violent predator and stating sufficient facts to support such allegation."

Then, when the attorney general files a petition, the district court "shall determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." K.S.A. 2017 Supp. 59-29a05(a). If such determination is made, "the court shall set the matter for a pretrial conference to establish a mutually

11

agreeable date for trial to determine whether the person is a sexually violent predator." K.S.A. 2017 Supp. 59-29a06(a). In the meantime, the person is taken into custody and detained in the county jail. K.S.A. 2017 Supp. 59-29a05(a)(1). There is no provision for posting bail. See K.S.A. 59-29a20 ("Any person for whom a petition pursuant to this act has been filed and is in the secure confinement of the state shall not be eligible for bail, bond, house arrest or any other measures releasing the person from the physical protective custody of the state.").

At trial, the State has the burden to prove beyond a reasonable doubt that:

"(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." *Williams*, 292 Kan. at 106 (citing K.S.A. 2010 Supp. 59-29a02[a]; *Kansas v. Crane*, 534 U.S. 407, 122 S. Ct. 867, 151 L. Ed. 2d 856 [2002]; PIK Civ. 4th 130.20).

Easterberg argues that it was legally impossible for the State to prove the first element, because the crimes for which he was convicted are not defined as sexually violent crimes. The State's first tack—the allegation contained in its petition for commitment—is to assert that the plain language of K.S.A. 2017 Supp. 59-29a02(a) defines "any person who has been . . . charged with a sexually violent offense" as a "sexually violent predator." Consequently, because the State initially charged Easterberg with rape and aggravated criminal sodomy, which are statutorily defined as sexually violent offenses, the State asserts that Easterberg is amenable to being involuntarily committed under the KSVPA, notwithstanding the fact that the State subsequently dismissed those charges.

12

Although in a different factual context, we previously addressed—and rejected—the notion that "simply being charged with a sexually violent offense subjects the person to involuntary commitment under the KSVPA." *State v. Schaefer*, 305 Kan. 581, 592, 385 P.3d 918 (2016). *Schaefer* held: "Viewing the KSVPA as a whole, rather than isolating the words, 'or charged,' in K.S.A. 59-29a02(a), gives one a clear indication that the KSVPA contemplates that the State must prove that a person actually committed the acts constituting a sexually violent offense before that person is subject to involuntary commitment as a sexually violent predator." 305 Kan. at 592-93. For instance, we pointed out that another part of K.S.A. 59-29a02(a)'s definition of sexually violent predator requires that the person is "likely to engage in repeat acts of sexual violence," necessarily implying that there was, in fact, an initial act of sexual violence that could be repeated. Moreover, K.S.A. 2017 Supp. 59-29a03 speaks to the "agency with jurisdiction" giving notification to the attorney general and the multidisciplinary team that a person may meet the criteria of a sexually violent predator; a person whose sexually violent crime charge has been dismissed or who has been acquitted of the charged crime would not be under the jurisdiction of any agency.

*Schaefer* also noted by way of comparison that, "if a person charged with a sexually violent offense has been found incompetent to stand trial, he or she can still be subjected to KSVPA proceedings, but only after 'the court shall first hear evidence and determine whether the person *did commit the act or acts charged.*' (Emphasis added.) K.S.A. 59-29a07(g)." 305 Kan. at 593. The rules of evidence applicable to a criminal trial apply; the incompetent person is entitled to all the constitutional rights of a criminal defendant (except competency to stand trial); and the standard of proof is beyond a reasonable doubt. K.S.A. 2017 Supp. 59-29a07(g). It would be nonsensical to interpret the statutory scheme to provide the disparate treatment the State suggests, i.e., persons competent to stand trial need only be charged with a sexually violent crime, while persons not competent to stand trial must be proved—beyond a reasonable doubt—to have committed an act of sexual violence. See *Fisher v. DeCarvalho,* 298 Kan. 482, 495,

13

314 P.3d 214 (2013) (courts construe statutes to avoid unreasonable or absurd results). Consequently, the State's initial argument fails.

In the alternative, the State contends that it should be permitted to prove during the course of the KSVPA proceeding that the crime of conviction—kidnapping—was sexually motivated, thereby transforming that charge into a sexually violent crime under K.S.A. 2017 Supp. 59-29a02(e)(13). That catch-all provision includes within the definition of a sexually violent crime "any act which either at the time of sentencing for the offense or subsequently during civil commitment proceedings pursuant to this act, has been determined beyond a reasonable doubt to have been sexually motivated."

Easterberg presents several arguments as to why the State cannot wait until the KSVPA proceeding to prove sexual motivation for the kidnapping. First, he points out that the sole provision upon which the State relies—K.S.A. 2017 Supp. 59-29a02(e)(13)—is contained in the definitions section of the Act. There is no procedural provision describing how that determination is to be effected in the KSVPA proceeding. In contrast, the Legislature explicitly set forth the procedure for persons found incompetent to stand trial in K.S.A. 2017 Supp. 59-29a07(g).

The district court pointed out the possible shortcoming of such a concurrent proceeding when it opined that "[i]t almost sounds like the case will be . . . almost like retrying the criminal case." Easterberg contends that reprosecuting him to determine his motive for committing the kidnapping is unconstitutional and violative of the principles set forth by the United States Supreme Court in *Kansas v. Hendricks*, 521 U.S. 346, 356, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), when it upheld the constitutionality of the KSVPA. Pointing to the fact that he has been incarcerated since July 22, 2016, Easterberg also argues that investing the State with the unfettered discretion to incarcerate a person in county jail for years without first establishing the existence of a sexually violent crime is generically unconstitutional.

14

Easterberg's best argument in response to the State's alternative theory—i.e., that the State can later prove Easterberg was sexually motivated to commit the kidnapping— is that the sentencing court in this criminal case made a specific finding to the contrary. The Sentencing Guidelines Journal Entry of Judgment in the criminal case provided a space for the sentencing court to indicate whether it found the crimes of conviction to be sexually motivated. That determination was relevant, *inter alia*, for purposes of KORA, K.S.A. 22-4901 et seq. Under KORA, "sexually motivated" is defined exactly the same as it is in the KSVPA. See K.S.A. 59-29a02(d) (KSVPA); K.S.A. 22-4902(c)(14) (now K.S.A. 2018 Supp. 22-4902[c][18]) (KORA). The sentencing judge checked the box for both of Easterberg's criminal convictions indicating that the crimes were *not* sexually motivated. The judge, prosecutor, and defense attorney all signed the journal entry before it was filed of record.

The State does not dispute the existence or content of the journal entry; it concedes that "the judge in Easterberg's criminal case checked a box on a form indicating that Easterberg's crime was not sexually motivated." Instead, it argues the criminal case journal entry is not a bar to finding sexual motivation in the KSVPA proceeding for more than one reason. Statutorily, the State apparently reads the "either/or" language of K.S.A. 59-29a02(e)(13) as allowing it to prove the kidnapping was sexually motivated in the KSVPA proceeding, notwithstanding a contrary finding in the criminal case. We do not adopt that interpretation.

The State also asserts that the doctrine of collateral estoppel, or issue preclusion, cannot operate here for a couple of reasons.

> "Collateral estoppel applies where (1) a prior judgment has been rendered on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties are the same or in privity, and (3) the issue litigated has been determined and is necessary to support the

15

judgment." *In re Tax Appeal of City of Wichita,* 277 Kan. 487, Syl. ¶ 3, 86 P.3d 513 (2004).

See also *In re Tax Appeal of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012) ("Issue preclusion prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action.").

The State points out that collateral estoppel does not apply when the two proceedings being considered are not of a like quality and extensiveness. The State asserts that a criminal proceeding and an involuntary commitment are not proceedings of like quality or extensiveness. That assertion, however, is belied by the statute upon which it is relying. K.S.A. 2017 Supp. 59-29a02(e)(13) specifically says that the sexual motivation of the act can be determined either at the criminal sentencing or during the civil commitment proceedings. In other words, if one adopts the State's interpretation of K.S.A. 2017 Supp. 59-29a02(e)(13), then one must accept that the Legislature has established the equality of the two proceedings with respect to the determination of sexual motivation.

The State's better argument is that Easterberg has failed to demonstrate that the issue of sexual motivation was actually litigated by the parties in the criminal case, which would be required to apply collateral estoppel. The State suggests that, because the kidnapping and aggravated battery convictions were the product of a plea agreement, the prosecutor may not have had any incentive to attempt to demonstrate that the kidnapping was sexually motivated at the sentencing hearing. But that supposition is neither confirmed nor refuted by the record.

Accordingly, it is necessary to remand this KSVPA case to Riley County District Court for a determination of whether the issue of sexual motivation was litigated in Easterberg's criminal case. If so, the State is estopped from relitigating that point in the

16

KSVPA proceeding and Easterberg would not be eligible for involuntary commitment. If not, the KSVPA proceeding can continue.

NUSS, C.J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

* * *

JOHNSON, J., concurring in part and dissenting in part: I agree with the majority's determination that this court can exercise original jurisdiction over Easterberg's petition for writ of habeas corpus, and I agree that a determination by the district court in the criminal proceeding that the acts constituting his kidnapping and aggravated battery convictions were not sexually motivated precludes a contrary determination in a subsequent KSVPA proceeding based upon those convictions. Where I part company with the majority is when it remands the case for a determination of whether the parties litigated the question of sexual motivation, i.e., whether the district court really meant to say what it said in its order.

To begin, it is helpful to pause and consider just what happened here. Easterberg was charged with rape and aggravated criminal sodomy, both of which are statutorily defined as a sexually violent offense. K.S.A. 59-29a02(e)(1) and (5). Consequently, if the State had proceeded with that prosecution and obtained a conviction on either statutorily defined sexually violent charge, Easterberg's motivation in committing the crime would not have been germane; the conviction alone would have been conclusive proof that Easterberg committed a sexually violent crime. But the State *voluntarily* agreed to

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 117,933 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.

17

dismiss the sexually violent charges and accept a plea to crimes that are not per se sexually violent. "It is not uncommon for a prosecutor to entice a plea agreement from a defendant charged with a registration-qualifying sex offense by offering to amend the charge to a crime that will not require the defendant to register [under KORA]." *State v. Petersen-Beard*, 304 Kan. 192, 222, 377 P.3d 1127 (2016) (Johnson, J., dissenting). If that were the scenario here—which I submit is more likely than the State's suggestion that the prosecutor was simply asleep at the wheel—the court's finding that the crimes of conviction were not sexually motivated would have been integral to the parties' plea agreement, rather than being an inadvertent box-checking. There would have been agreement on the court's finding and no need for adverse litigation.

Nevertheless, we need not engage in dueling speculation. We have an appellate record that contains a journal entry—an order of the court—that quite explicitly says what happened; the district court found that the crimes of conviction were not sexually motivated. Generally, when a court enters a judgment "this court presumes that the trial court found all facts necessary to support its judgment." *McIntyre v. State*, 305 Kan. 616, 617-18, 385 P.3d 930 (2016) (citing *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 [2012]; *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 [2015]; Supreme Court Rule 165[b] [2015 Kan. Ct. R. Annot. 257]).

Further, a finding on sexual motivation was required in this case for purposes of determining whether Easterberg was subject to KORA registration. Accordingly, contrary to the State's suggestion, the prosecutor did have a dog in the fight over the sexual motivation finding, i.e., the judge's ruling on that question made a difference in the ongoing relationship between Easterberg and the State. Consequently, when both the prosecuting attorney and the defense counsel approved the court's order by affixing their signatures to the journal entry, we should simply accept that the parties (and the court) meant what they said in writing. If the majority needs more than the prosecutor's signature, it can look to the fact that the State did not file a motion to alter or amend the

18

journal entry; the State did not request the court to make additional findings of fact or conclusions of law; and the State did not appeal the district court's determination that Easterberg's convictions were not sexually motivated. I see no basis upon which the State is entitled to another bite of the apple.

Perhaps more importantly, the KSVPA contains a provision that explicitly addresses the procedure the State "shall" follow when sufficient evidence of sexual motivation exists for a crime that is not statutorily defined as a per se sexually violent crime. K.S.A. 2017 Supp. 59-29a14 provides (with emphasis added here):

"(a) The county or district attorney *shall* file a special allegation of sexual motivation within 14 days after arraignment in *every* criminal case other than sex offenses as defined in article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2018 Supp. 21-6419 through 21-6422, and amendments thereto, when sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify a finding of sexual motivation by a reasonable and objective fact finder.

"(b) In a criminal case wherein there has been a special allegation, the state shall prove beyond a reasonable doubt that the accused committed the crime with a sexual motivation. The court shall make a finding of fact of whether or not a sexual motivation was present at the time of the commission of the crime, or if a jury trial is had, the jury, if it finds the defendant guilty, also shall find a special verdict as to whether or not the defendant committed the crime with a sexual motivation. This finding shall not be applied to sex offenses as defined in article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2018 Supp. 21-6419 through 21-6422, and amendments thereto.

"(c) The county or district attorney shall not withdraw the special allegation of sexual motivation without approval of the court through an order of dismissal of the special allegation. The court shall not dismiss this special allegation unless it finds that

19

such an order is necessary to correct an error in the initial charging decision or unless there are evidentiary problems which make proving the special allegation doubtful."

Curiously, no one involved in this case cites to K.S.A. 2017 Supp. 59-29a14. I would think that one should ruminate on the legislative intent conveyed by its use of such explicit instructions—in ordinarily mandatory language—for determining sexual motivation in the criminal case, while saying not a whit about the procedure to make the determination in the KSVPA proceeding, except for persons found incompetent to stand trial. If nothing else, K.S.A. 2017 Supp. 59-29a14 belies the State's contention that K.S.A. 2017 Supp. 59-29a02(e)(13) is plain and unambiguous. See *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012) (even crystal clear statutory language can be ambiguous if various statutes conflict). But given that the district court did make the requisite finding in the district court and the attorneys for both parties approved the finding, we need not further consider the impact of K.S.A. 2017 Supp. 59-29a14.

In short, I would hold that the district court in the underlying criminal case made a finding that Easterberg's kidnapping and aggravated battery convictions were not sexually motivated, making him ineligible for involuntary commitment under the KSVPA. I would remand for the sole purpose of ordering the district court to dismiss the case and discharge Easterberg from custody.

LUCKERT, J., and MICHAEL J. MALONE, Senior Judge, join in the foregoing concurring and dissenting opinion.

\* \* \*

STEGALL, J., dissenting: "That habeas corpus is not a substitute for an appeal is elementary." *State v. Shores*, 187 Kan. 492, 493, 357 P.2d 798 (1960); see *Germany v. Hudspeth*, 174 Kan. 1, 2, 252 P.2d 858 (1953) ("this court is committed to the rule that a

20

habeas corpus proceeding is not a substitute for appellate review"); see also *Medina v. Choate*, 875 F.3d 1025, 1029 (10th Cir. 2017), *cert. denied* 138 S. Ct. 1573 (2018) (citing extensive caselaw to conclude that "the prisoner is limited to proceeding by motion to the trial court, followed by a possible appeal after judgment, before resorting to habeas relief"). As the United States Supreme Court declared, "The writ of habeas corpus is not intended to serve the office of a writ of error even after verdict; and, for still stronger reasons, it is not available to a defendant before trial, except in rare and exceptional cases," and this rule has been "so definitely established . . . as to leave no room for further discussion." *Johnson v. Hoy*, 227 U.S. 245, 247, 33 S. Ct. 240, 241, 57 L. Ed. 497 (1913).

Thus, we have long held that a habeas proceeding "cannot be used to review nonjurisdictional errors and irregularities leading up to judgment." *James v. Amrine*, 157 Kan. 397, 399, 140 P.2d 362 (1943). This basic rule has never been questioned in Kansas, and today's majority does not explain why it should not preclude the relief Easterberg seeks.

The remedy the majority has crafted—a remand for fact-finding on a question of estoppel—makes it clear that Easterberg has appellate remedies. Procedural arguments like this (res judicata or claim preclusion) are bread-and-butter appellate claims. I would simply apply our long-standing rule that habeas corpus cannot serve as a substitute for ordinary, prejudgment complaints about the State's case. That is what an appeal is for.

Because I would dismiss Easterberg's petition on these grounds—refusal to exercise jurisdiction when the petitioner has adequate alternative remedies—it is unnecessary for me to reach the complicated question of whether this writ falls outside our original jurisdiction under the Kansas Constitution. Given that a majority of the court has decided to exercise jurisdiction, however, I agree that a remand is necessary under these facts.