NOT DESIGNATED FOR PUBLICATION

Nos. 118,978
119,436
119,437

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEATON J. WASHINGTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING and WARREN M. WILBERT, judges. Opinion filed October 4, 2019. Affirmed in part and dismissed in part.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM:  Keaton J. Washington appeals two district court rulings. First, he appeals the district court's order requiring him to register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. We hold that we have no jurisdiction to consider this appeal because Washington did not file it in a timely manner and, when he did, he failed to identify the district court's KORA registration ruling in the notice of appeal. We dismiss the KORA registration issues.

1

Second, Washington appeals the district court's denial of his postsentence motion to withdraw his no-contest pleas. We affirm this ruling because the district court did not abuse its discretion by denying Washington's motion to withdraw pleas. Accordingly, we affirm in part and dismiss in part.

FACTUAL AND PROCEDURAL BACKGROUND

This consolidated appeal involves three of Washington's criminal cases in which the district court denied his postsentencing motion to withdraw pleas, revoked his probations, and ordered him to serve the underlying sentences.

In October 2014, the State charged Washington with criminal damage to property. The State alleged that Washington damaged his ex-girlfriend's car by repeatedly kicking it during a domestic dispute. The district court issued a protective order prohibiting Washington from contacting his ex-girlfriend.

In December 2014, the State charged Washington with aggravated burglary and attempted aggravated robbery. In this case, the State asserted that Washington entered a woman's apartment while she was taking her daughter to school. When the victim returned to the residence, Washington pointed a handgun at her and demanded, "Where's the [expletive?]"

Then in April 2015, the State charged Washington with two counts of criminal possession of a weapon by a felon. These charges resulted from a July 2014 traffic stop in which law enforcement officers located two handguns in Washington's possession.

Washington was incarcerated from December 2014 until September 2015 awaiting disposition of his criminal cases. While in jail, Washington repeatedly called his ex-girlfriend. During the calls, Washington blamed his ex-girlfriend for the October 2014

2

incident, attempted to persuade her not to testify in court, asked her to set up an online account to communicate with him, and asked for money. On January 30, 2015, the district court suspended Washington's communication privileges because he violated the no-contact order with his ex-girlfriend. The district court's order prohibited Washington from communicating with anyone outside the jail, except for his attorney.

Washington filed two motions asking the district court to restore his communication privileges. He claimed that he could not talk with his family and the blanket communication restriction was coercive and unnecessary. On September 1, 2015, the district court held a hearing and modified its order suspending Washington's communication privileges. The district court reasoned that Washington should be able discuss any plea agreements with his family along with his attorney. As a result, the district court lifted Washington's phone and visitation restrictions.

On September 18, 2015, Washington accepted a global plea agreement with the State to resolve all three criminal cases. Under the agreement, Washington promised to plead no contest to criminal damage to property, aggravated burglary, attempted aggravated robbery, and two counts of criminal possession of a firearm. The parties agreed to recommend aggravated sentences for each count and to run the counts consecutive. Importantly, although Washington was facing presumptive prison sentences, the State and Washington agreed to recommend a dispositional departure to probation. The plea agreement also stated that "[t]he defendant is aware that [the attempted aggravated robbery charge] requires him to register as a violent offender pursuant to KORA."

At the plea hearing, Washington's counsel, Brad Sylvester, explained that Washington is "getting the plea agreement that he has been asking for quite a long time and that is the recommendation for probation." In compliance with the plea agreement, Washington pled no contest to all five counts against him in the three cases. Before

3

accepting the pleas, the district court engaged in a detailed colloquy with Washington to insure that he understood his rights and the consequences of his pleas. During this plea colloquy, Washington said he was satisfied with Sylvester's representation and the district court's treatment of him. Washington also agreed that he had sufficient time to discuss the plea agreement documents with Sylvester.

The State recited a factual basis for each count charged against Washington. When discussing the burglary/attempted robbery case, the State explained that when the victim returned home after dropping off her daughter she discovered two men in her residence, "both of whom had guns." One of the men asked the victim, "Where is the [expletive?]" In a police lineup, the victim identified Washington "as being the individual that was in her house with the handgun" that asked her the question.

The district court determined that Washington understood the consequences of his no-contest pleas and that he knowingly, intelligently, freely, and voluntarily waived his right to jury trial. As a result, the district court accepted Washington's pleas and found him guilty as charged. The district court informed Washington that "with regard to the attempted aggravated robbery . . . that does require registration as provided by the Kansas Offender Registration Act." The district court indicated that it would "sign off on the notice of duty to register." The registration notice stated that Washington needed to register under KORA for his convictions of aggravated burglary and attempted aggravated robbery.

At sentencing, the district court discussed Washington's mental health diagnoses of anxiety, paranoia, and anger problems. The district court specifically asked Washington whether he could complete probation. Washington responded, "Yes, sir. I don't want to get into any more trouble." The district judge probed further, explaining that the plea agreement called for a maximum underlying sentence in exchange for probation:

4

"Well, I understand that. I guess what I'm saying is, you know, if you want to just do the time and be done with it, I can—here's what you've done. You've maxed out your credit card; right? You made a deal with the State where as much time as they can possibly recommend, you have agreed to do in exchange for probation. Okay, all that works out if you can do probation. But if it doesn't work out, then you've got over ten years of prison in the balance. And I guess what I'm saying to you is if, you know, you don't think you can manage your mental issues and, you know, stay out of trouble for two years, then I don't know that there is any reason to impose the high numbers. If you just want to do your time, you would be doing less time.

. . . .

"But it would mean that you would be doing your time. Now, I'm just telling you, straight up, Mr. Washington, that this is the deal that you have negotiated. So if there is a probation violation, I'm not going to change the sentence; all right? So if the plan is:  I'm going to agree to take the high number on everything, and then if I mess up probation and I have to go do time, then I'll just hedge my bets and ask the judge to change the sentence at that point. Just understand, I'm not going to do that. So you have a boatload of time on the condition that you can do probation for 24 months. Do you understand, that's the deal that you have made? And that it's difficult sitting where you're sitting to appreciate what you signed off on, but ten years is a lot of time. You understand all that?"

After the district court discussed the risks and benefits of the plea agreement, Washington said he understood and he wanted the district court to follow the parties' recommended sentence. Washington explained, "I talked to my family about it. I understand. I'm going to be on the right track." Sylvester interjected:

"Your Honor, he and I had the same conversation. Because I said, you can't kick any more cars or do anything. It's a big responsibility. This was the deal that the [district attorney] handed us right before trial. And that's what he had been wanting the whole time. And I wasn't pushing it. If he can do the probation, that's great. This is the greatest way to handle it. But he and I had the same conversation that you're having with him."

5

The district court followed the joint request for a dispositional departure and sentenced Washington to 36 months of probation with an underlying sentence of 129 months in prison. At the end of the sentencing hearing, the district court asked whether Washington needed to register under KORA. The State responded, "I don't believe he does."

About a month after sentencing, the district court reconvened to clarify Washington's KORA registration requirements. The district court judge explained that, after reviewing the plea agreement and applicable statutes, "I think that the law does require Mr. Washington to register under the Offender Registration Act." The district court continued that Washington's "duty to register has everything to do with the offense of conviction and whether that offense is designated as a registration offense."

The journal entry of sentencing in the burglary/attempted robbery case indicated that Washington must register under KORA for his conviction of attempted aggravated robbery. The journal entry specified that Washington must register as a violent offender for 15 years because the conviction was for an attempt to commit a person felony and the district court found that the felony was committed with a deadly weapon.

Subsequently, Washington violated numerous conditions of his probation. Among the violations, he tested positive for methamphetamine, cocaine, and THC; failed to report to his intensive supervision officer; absconded from Community Corrections; and failed to attend drug/alcohol treatment. Additionally, Washington committed several new crimes while on probation, including fleeing and eluding, running a stop sign, driving while suspended, and failing to register under KORA. After the State filed the warrants alleging the various probation violations, Washington moved to withdraw his pleas and claimed he was forced to accept the plea agreement.

The district court held an evidentiary hearing on Washington's motion to withdraw pleas. Two witnesses testified—Washington and Sylvester. The same district judge who accepted Washington's pleas presided over the hearing.

Washington testified that he did not want to enter into a plea agreement, but Sylvester said the plea agreement was in his best interest. Washington explained that even though the district court reinstated his phone privileges, the jail did not restore his phone privileges until after he accepted the plea agreement.

Washington admitted that Sylvester visited him in jail to discuss the plea agreement the day before he accepted it. At that time, Washington refused to accept the plea agreement because he wanted to talk to his family about it. According to Washington, Sylvester gave him an ultimatum, either take the plea agreement or receive a longer prison sentence. Washington testified the recommendation for probation was not a benefit because he believed the failure rate for probation is high. Washington also said that Sylvester advised him that he could not withdraw his pleas. Washington asserted that he did not learn that he could withdraw his pleas until he gained access to the jail law library after his August 2016 arrest.

Sylvester testified that he had practiced criminal defense for about 30 years. He remembered working effectively with Washington and that his client raised no complaints about his representation. Sylvester engaged in extensive plea negotiations with the State, and he communicated with Washington about those discussions. Washington requested that Sylvester negotiate for probation and he wanted Sylvester to do whatever he could to obtain probation for him. During negotiations, it became apparent that Washington's options were to either seek the shortest prison sentence possible or obtain probation with a significantly lengthy controlling sentence.

Sylvester explained that shortly before trial, the State offered probation with a substantial underlying sentence. Sylvester did not recommend this plea offer, however, because, as he informed Washington, he believed Washington would violate his probation and then face a lengthy prison sentence. As a result, Sylvester did not advise Washington that the plea agreement was in his best interest. Still, Sylvester testified that Washington entered the no-contest pleas, "Because he wanted to."

Sylvester also testified that he never told Washington—or any client—that he could not withdraw his pleas. Moreover, Sylvester did not recall Washington telling him he wanted to withdraw his pleas.

After considering the evidence, the district court denied Washington's motion to withdraw pleas, finding that no manifest injustice existed which warranted the court to set aside Washington's pleas in the three cases. In denying the motion, the district judge noted that Washington's testimony was "diverse to the record here before me." The district court determined that Washington obtained the plea agreement he wanted and accepted it despite Sylvester's warnings. The district court believed Washington's attempt to withdraw his pleas was motived by his probation violations which could result in a significant prison term. The district court concluded that "at the time [Washington] entered his plea, he knowingly, willingly, intelligently and freely entered into that with no reservations, no questions for the Court, and in fact received his bargained-for consideration."

In December 2017, Washington admitted to violating his probation. The district court revoked Washington's probation and imposed modified prison sentences in the three cases which totaled 86 months. Washington filed a notice that he was appealing "his Probation Revocation and the denial of his Motion to Withdraw Plea."

8

Washington makes two challenges to his KORA registration requirements. First, he contends the district court erred by ordering registration under K.S.A. 2015 Supp. 22-4902(e)(2) for the attempted aggravated robbery conviction because the district court never found that a deadly weapon was used to commit the offense. Alternatively, Washington argues the district court violated his constitutional rights as described in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when the district judge—rather than a jury—determined that he used a deadly weapon in committing the crime.

In response, the State contends our court is without jurisdiction to consider Washington's KORA registration challenges. Whether jurisdiction exists is a question of law over which appellate courts exercise unlimited review. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

"The right to appeal is purely statutory and not a right contained in the United States or Kansas Constitutions." *State v. Rocheleau*, 307 Kan. 761, 763, 415 P.3d 422 (2018). Our court only has appellate jurisdiction as bestowed by statute; with no statutory authority, we have a duty to dismiss the appeal. *Jenkins v. Chicago Pacific Corp.*, 306 Kan. 1305, 1308, 403 P.3d 1213 (2017). "A timely notice of appeal is a prerequisite to appellate jurisdiction." *State v. Smith,* 303 Kan. 673, 677, 366 P.3d 226 (2016). Unless an exception applies, the failure to file a timely notice of appeal requires us to dismiss Washington's appeal of this issue. See *State v. Shelly*, 303 Kan. 1027, 1036, 371 P.3d 820 (2016).

A criminal defendant has 14 days from the district court's pronouncement of sentence to file a direct appeal. K.S.A. 2018 Supp. 22-3608(c); 303 Kan. at 1036. Defendants may appeal from any judgment against them in the district court, and "upon

appeal any decision of the district court or intermediate order made in the progress of the case may be reviewed." K.S.A. 2018 Supp. 22-3602(a). As a result, a defendant must file a notice of appeal 14 days after judgment to challenge KORA registration on direct appeal. See *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018) (holding that a district court's order requiring KORA registration may be challenged on direct appeal).

The district court sentenced Washington on November 4, 2015. Before sentencing, the district court informed Washington that his attempted aggravated robbery offense would require KORA registration. This occurred at the time of Washington's conviction as required by K.S.A. 2015 Supp. 22-4904(a)(1)(A). On December 11, 2015, the district court held a hearing after sentencing to clarify that Washington needed to register under KORA. The district court then filed a journal entry 12 days later which specified that Washington needed to register as a violent offender because he committed an attempted person felony with a deadly weapon.

Although Washington was sentenced and ordered to register in 2015, he did not file this appeal until December 22, 2017—well past the 14-day limit to file an appeal. And this appeal relates to the district court's probation revocation and denial of a motion to withdraw pleas, not Washington's convictions or sentencing. Kansas law is clear under these circumstances—an appeal may only relate to matters surrounding the probation revocation and motion to withdraw pleas, not issues related to the original conviction or sentence. *Wilkerson v. State*, 38 Kan. App. 2d 732, 734, 171 P.3d 671 (2007). Because Washington failed to file a timely notice of appeal, we lack jurisdiction to consider the district court's deadly weapon finding and the KORA registration requirements.

There is a second basis to dismiss the KORA issue based on jurisdictional grounds. An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. *State v. Garza*, 295 Kan. 326, 329, 286 P.3d 554 (2012). Washington's notice of appeal stated that he "hereby appeals his Probation Revocation and the denial of

10

his Motion to Withdraw Plea to the Appellate Courts of the State of Kansas." Missing from Washington's notice of appeal is any language relating to a KORA registration challenge. Because the district court's ruling was not identified in the notice of appeal, we lack jurisdiction to consider the KORA registration challenges.

Washington claims that we should reach the merits of his first KORA registration argument because he is challenging the district court's jurisdiction to order registration. He argues that, because the district court failed to make a deadly weapon finding, the court lacked jurisdiction to order KORA registration.

As Washington suggests, subject matter jurisdiction may be raised at any time. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). But Washington is not challenging the district court's subject matter jurisdiction. Subject matter jurisdiction is the court's power to hear and decide a particular type of action and the Kansas Constitution dictates the existence of subject matter jurisdiction in criminal cases. *In re Care & Treatment of Easterberg*, 309 Kan. 490, 492, 437 P.3d 964 (2019). "Jurisdiction over subject matter is the power to decide the general question involved, and not the exercise of that power." *Miller v. Glacier Development Co.*, 293 Kan. 665, 669, 270 P.3d 1065 (2011). Washington does not claim the district court lacked the power to make a deadly weapon finding and order KORA registration, he argues the court erred by exercising its power to order registration. As a result, this issue does not involve subject matter jurisdiction and Washington may not raise it for the first time on appeal.

Lacking jurisdiction to consider the KORA registration challenges, we dismiss this portion of Washington's appeal.

11

Next, Washington contends the district court abused its discretion by denying his motion to withdraw his no-contest pleas. Washington claims the district court's decision to deny his motion was unreasonable because he was coerced into taking the pleas.

A postsentencing motion to withdraw plea is governed by K.S.A. 2018 Supp. 22-3210(d)(2), which provides "[t]o correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

On appeal, the defendant must establish that the district court abused its discretion in denying a postsentence motion to withdraw plea. *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Miller*, 308 Kan. 1119, 1138, 427 P.3d 907 (2018). When determining whether the district court abused its discretion, this court does not reweigh evidence or assess witness credibility. Instead, we defer to the district court's factual findings so long as those findings are supported by substantial competent evidence. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

Because Washington moved to withdraw his pleas after sentencing, he must show that allowing him to withdraw his pleas is necessary to avoid manifest injustice. K.S.A. 2018 Supp. 22-3210(d)(2). Kansas courts generally consider three factors commonly known as the *Edgar* factors—named after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006)—when considering whether a defendant has shown the requisite manifest injustice. *Johnson*, 307 Kan. at 443. These factors are "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *Bricker*, 292 Kan. at 244. The defendant need not establish all

three *Edgar* factors to show manifest injustice and the district court may also consider other factors in making its determination. *Johnson*, 307 Kan. at 443.

Washington relies on the second *Edgar* factor and argues that he was coerced into accepting the plea agreement. Washington claims his inability to communicate with his family while the case was pending compelled him to accept the plea agreement. He claims this coercion was magnified by a "toxic attorney-client relationship" as evidenced by Sylvester saying that Washington had no choice but to accept the plea agreement and misadvising Washington that he could not withdraw his pleas.

Apart from his attorney, Washington lost his communication privileges with the outside world for about seven months while his case was pending. The district court suspended Washington's privileges after he repeatedly violated a no-contact order with the victim and tried to dissuade her from attending court. But weeks before the plea hearing, the district court modified its order and lifted Washington's phone and visitation restrictions.

At the hearing on his motion to withdraw pleas, Washington testified that the jail failed to implement the modified court order and reinstate his phone privileges before he accepted the plea agreement. Washington explained this prevented him from talking with his family. However, the district court rejected this testimony from Washington as contrary to the record and determined that he had the opportunity to discuss the plea agreement with his family. Our court does not reassess witness credibility. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

But even if Washington was unable to consult with his family, he does not explain how the failure would have affected his decision or otherwise coerced him to accept the plea agreement. Instead, Washington revealed at sentencing that he discussed the plea agreement with his family and he still wanted to accept it. When the district court asked

13

Washington whether he wanted the court to follow the plea agreement he responded, "Yes, sir. I mean, *I talked to my family about it.* I understand. I'm going to be on the right track." (Emphasis added.) As a result, even if the jail failed to modify Washington's suspended communication privileges—a suspension trigger by his repeated no-contact violations—that failure did not influence Washington's decision to enter the plea agreement.

Turning to Washington's assertions about Sylvester's representation, we reiterate that our court does not reweigh evidence but defers to the district court's factual findings supported by substantial competent evidence. *Johnson*, 307 Kan. at 443. Sylvester explained that he and Washington worked effectively and Washington raised no complaints about his representation. Sylvester testified that he never said that Washington's only choice was to enter the pleas and that he never informed Washington that he could not withdraw his pleas. Instead, Sylvester discussed his concerns about the plea agreement with Washington and he did not believe the plea bargain was in Washington's best interest. The district court found that Washington freely accepted the plea agreement despite Sylvester's advice.

The record shows that Washington understood the plea agreement and was not coerced into entering into it. Washington rejected previous plea offers for less time without probation because he wanted a recommendation for probation as part of the plea agreement. Shortly before trial, the State offered a plea agreement which recommended probation and Washington accepted it because that was the plea bargain he wanted. Washington waited until after he violated probation, and potentially eliminated the benefit of his plea agreement, before moving to withdraw his pleas. Both the district court and Sylvester thoroughly advised Washington about the consequences of the plea agreement, including what could occur if he violated his probation. Washington explained that he understood the consequences of the plea agreement and wished to enter into it.

We hold the district court did not abuse its discretion by denying Washington's motion to withdraw his no-contest pleas. We affirm the denial of the motion.

Affirmed in part and dismissed in part.